452 So.2d 676 (1984)
STATE of Louisiana
v.
Willie L. CELESTINE.
No. 82-KA-2376.
Supreme Court of Louisiana.
May 14, 1984.
*677 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Mike Harson, Asst. Dist. Atty., for plaintiff-appellee.
Bertrand DeBlanc, Lafayette, for defendant-appellant.
MARCUS, Justice.
Willie L. Celestine was charged by the grand jury in the same indictment with three separate counts of aggravated rape in violation of La.R.S. 14:42. Prior to trial, the court granted a severance of count three.[1] After trial by jury, defendant was found guilty as charged on the remaining two counts and was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence on each count. The court expressly directed that the sentences be served concurrently. On appeal, defendant relies on four assignments of error for reversal of his convictions and sentences.[2]

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion for a new trial on the ground there was insufficient evidence to support the convictions. Specifically, he argues there was insufficient evidence to prove he was the perpetrator of the two rapes.

Count 1
In support of count one, aggravated rape of Ms. S on June 4, 1981, the state introduced the following evidence. Ms. S testified that, at the time of the rape, she was a sixty-five-year old widow who resided alone on Alsador Drive in Lafayette. On the evening of June 3, she went to bed about 11:30 p.m. She was sleeping face down on her stomach when a man jumped on her back. He held her arms down and said, "My name is Michael, and don't you move or I'm going to cut you." After cutting her three times, he forcibly had anal intercourse with her. The attacker left the apartment by using the back door. Ms. S testified that she could not see her attacker and did not recognize his voice. After the incident, she went to a neighbor's home where she had a bowel movement and thoroughly cleaned herself. The police took her to the hospital where she was examined by a doctor. When she returned home, she noticed that the back screen door had been cut near the latch. She concluded her testimony by locating her apartment on an aerial photograph of the housing project area by placing an "X" on the picture; her building is on a cul-de-sac and is the last one on Alsador Drive before the drainage ditch.
The doctor who examined Ms. S at the hospital testified that she had three lacerations and a "small perianal abrasion." He stated that the abrasion, which is usually caused by trauma, would be consistent with anal intercourse. There was no semen visible in the rectal area. But, according to the doctor, because Ms. S had had a bowel movement and did a thorough cleaning, the chances were slight that there would be any evidence of semen.
Finally, the state introduced in evidence defendant's confession. In the confession, defendant admitted to raping a woman who lived in the last house before the curve on the right hand side of Alsador Drive. He stated that he got into the house by cutting a hole in the back screen door so that he could unlatch the screen door. He also stated that the woman was sleeping on her stomach and that she remained on her stomach with her face in the mattress throughout the incident. After the act, he *678 left the apartment by using the back door. He denied having a knife, threatening to cut the victim and raping her other than vaginally.

Count 2
In support of count two, aggravated rape of Ms. B on September 5, 1981, the state introduced the following evidence. Ms. B testified that, at the time of the rape, she was a fifty-nine-year old widow who resided alone on Alsador Drive in Lafayette. On the evening of September 4, she went to bed about 10:00 p.m. Sometime early in the morning, she was awakened by a man who was choking her and who told her, "If you don't do what I say, I'll kill you." Because there was no light in the bedroom, she could not see her attacker. Soon after the attack began, she passed out. The next thing she remembered was waking up in the hospital. When she returned from the hospital, she noticed that the kitchen window screen was "all twisted" and the back screen door had a square cut near the latch. Finally, just as Ms. S had done, Ms. B located her house on the same aerial photograph of the housing project; it was the fourth building from the corner on the right hand side of Alsador Drive. Ms. B also marked the house where defendant lived with his mother. The photograph indicates that the S, B and Celestine residences were within a one-block radius of each other.
The doctor who examined Ms. B at the hospital testified that she was unconscious when she arrived. He noticed that she had minute hemorrhages on her face and head and large hemorrhages on her neck. His opinion was that she had been choked into unconsciousness. He took a rectal swab and vaginal washing. A forensic chemist testified that the swab and washing both showed the presence of spermatozoa.
An expert in fingerprint identification testified that a latent print lifted from the inside kitchen window sill area of Ms. B's home had about fifteen identical points with a roll print of defendant's left ring finger. Ms. B was recalled to the stand and testified that she had no knowledge of defendant ever being inside her house.
The state then introduced in evidence defendant's confession. He admitted to raping a woman who lived in the fourth house on the right hand side of Alsador Drive. The incident occurred late one Friday night or Saturday morning. He stated that he entered the house through the kitchen window and raped the woman in a dark bedroom.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Sweeney, 443 So.2d 522 (La.1983). It is well settled that an accused party cannot be legally convicted on his own uncorroborated confession without proof that a crime has been committed by someone; in other words, without proof of the corpus delicti. State v. Simmons, 443 So.2d 512 (La.1983); State v. Mullins, 353 So.2d 243 (La.1977); State v. Morgan, 157 La. 962, 103 So. 278 (1925). Once the corpus delicti has been independently established, a confession alone may be used to identify the accused as the perpetrator of the crime. United States v. Opdahl, 610 F.2d 490 (9th Cir. 1979), cert. denied, 444 U.S. 1091, 100 S.Ct. 1056, 62 L.Ed.2d 780 (1980); United States v. Johnson, 589 F.2d 716 (D.C.Cir.1978); State v. Reed, 420 So.2d 950 (La.1982) (Calogero, J., concurring); State v. Freetime, 334 So.2d 207 (La.1976); 1 H. Underhill, Criminal Evidence § 36, at 18 (6th ed. P. Herrick 1980 Supp.); 1 F. Wharton, Criminal Evidence § 691, at 490 (13th ed. C. Torcia 1972).
In the instant case, since the corpus delicti of each count of aggravated rape was established by sufficient evidence independent of the confession, defendant's confession may be considered together with all of the other evidence in the sufficiency of *679 the evidence review. With regard to count one, Ms. S testified that she was the victim of an aggravated rape. She described how a man committed an act of anal intercourse on her without her consent. She further described how she was prevented from resisting the act by a threat that she would be knifed if she did not comply. Her testimony about the rape and the presence of a knife were corroborated by the doctor who examined her at the hospital. To prove defendant was the author of this crime, the state introduced in evidence defendant's confession. In the confession, defendant admitted to raping a woman and provided a detailed account of the incident. His description of the events and the testimony of the victim matched on several points: mode of entry (cut back screen door to unlock latch); position of victim during the incident (lying on her stomach); manner of departure (through the back door); and location of the building where the crime occurred (last house before the cul-de-sac on the right hand side of Alsador Drive). Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have determined beyond a reasonable doubt that defendant committed an aggravated rape on Ms. S. Hence, the trial judge did not err in denying defendant's motion for a new trial on count one.
With regard to count two, Ms. B testified that she was the victim of an attack by a man who threatened her with death if she did not comply with his wishes. Although she passed out and did not remember the rest of the incident, she did not consent to have sexual intercourse with the man. The forensic chemist testified that there was evidence of spermatozoa in the rectal swab and vaginal washing taken from Ms. B when she arrived at the hospital. To prove defendant was the author of this crime, the state introduced in evidence the testimony of the fingerprint analyst and defendant's confession. The expert in fingerprint identification testified that the latent fingerprint found on the inside kitchen window sill matched defendant's left ring finger. In the confession, defendant admitted to raping a woman and provided a detailed account of the incident. As above, his description of the events and the testimony of the victim matched on several points: mode of entry (through the kitchen window); time of incident (early one Saturday morning/late Friday evening); and location of the building where the crime occurred (fourth building on the right hand side of Alsador Drive). Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have determined beyond a reasonable doubt that defendant committed an aggravated rape on Ms. B. Hence, the trial judge did not err in denying defendant's motion for a new trial on count two.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in denying his motions to quash and sever the two counts of the indictment. He argues the two counts were improperly joined and he was prejudiced at trial by the joinder of these offenses.
Two or more offenses may be joined in the same indictment in a separate count for each offense under La.Code Crim.P. art. 493 if the offenses charged
are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
In the instant case, the offenses charged, two counts of aggravated rape, are of the same or similar character. Also, since the punishment for each offense is necessarily confinement at hard labor, the mode of trial (jury composed of twelve jurors, ten of whom must concur to render a verdict) is the same. La.Code Crim.P. art. 782. Hence, the offenses were properly joined in the same indictment. La.Code Crim.P. art. 493.
*680 When an accused has been charged in the same indictment with two or more offenses pursuant to art. 493, he may apply for severance of offenses under La. Code Crim.P. art. 495.1, which provides:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
Such a motion is addressed to the sound discretion of the trial court and the court's ruling should not be disturbed on appeal absent a showing of an abuse of discretion. State v. Williams, 418 So.2d 562 (La.1982). According to State v. Washington, 386 So.2d 1368 (La.1980), considerations for the trial court in determining whether prejudice may result from joinder include
whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.
In State v. Carter, 352 So.2d 607 (La.1977), we held that art. 495.1, as it read at that time,[3] normally required severance when the offenses were joined solely because they were of the "same or similar" character unless evidence of each offense would have been respectively admissible at the separate trial of the other. In Washington, we held that Carter still remained viable as a criterion for judging when there is a strong possibility of prejudice, even though art. 495.1 had been amended. However, under the new article, a severance need not be granted if the prejudice could effectively be avoided by other safeguards. Thus, a severance is not mandated simply because the offense would not be admissible at separate trials if the defendant is not "prejudiced" by the joinder. We have held that there is no prejudicial effect from the joinder of two or more offenses when the evidence of each offense is relatively simple and distinct, even though such evidence might not have been admissible in separate trials of the offenses because, with a proper charge, the jury can easily keep the evidence of each offense separate in its deliberations. State v. Williams, supra; State v. Washington, supra; State v. Robinson, 404 So.2d 907 (La.1981).
In the instant case, the two aggravated rapes, although strikingly similar, were not so unique as to qualify as "signature crimes." Thus, the offenses would not have been admissible under the Prieur rationale.[4] Therefore, it is necessary to determine whether the jury knew that defendant was charged with separate offenses requiring separate verdicts as to each offense and that the evidence of one offense could not be considered as evidence of the other offense. After a review of the proceedings, we conclude that the jury was sufficiently apprised of its function and responsibilities to protect defendant from being prejudiced by the joinder. The trial judge's jury charge on this issue was as follows:
The defendant is charged with aggravated rape of [Ms. S] and [Ms. B]. These are two (2) separate charges and should be considered as such. You must make a *681 determination in each of these charges and reach a separate but independent verdict in each case. These verdicts should be reached after a full consideration of all the charges I have given you and will give you as to the nature of your deliberation. You are not to consider the evidenceExcuse me. You are to consider the evidence in each case and determine which is the proepr verdict in that particular case. The verdicts may be similar or dissimilar, according to how you are impressed with the evidence in each particular case.
The judge supplied the jury with two separate verdict forms. Also, in closing argument, the prosecutor informed the jury of its responsibility to keep the charges separate: "It is very important to remember that Mr. Celestine is at this time charged with two counts ... You'll be told by the Judge that these are to be considered separately by you. Despite the fact that they are included in one indictment, they are two separate charges.... [I]n your consideration, you should consider them separately." Moreover, the state presented its evidence in a logical and straight-forward manner, keeping the evidence of each offense as separate as possible. Admittedly, the jury was not specifically instructed that the evidence of one crime could not be used in determining defendant's guilt of the other; however, under the circumstances of this case, defendant was not prejudiced by the absence of such an instruction. The trial judge's instruction, the separate verdict forms and the closing argument of the prosecutor did more than merely advise the jury to bring in separate verdicts; the jury was clearly admonished to consider guilt or innocence as to each individual count independently and separately based upon the evidence in that particular case. And, the presentation of the evidence by the prosecutor in an orderly fashion enabled the jury to accomplish this task.
Therefore, defendant was not prejudiced by the joinder of these offenses for trial. Accordingly, the trial judge did not abuse his discretion in denying defendant's motions to quash and for a severance.
Assignment of Error No. 3 is without merit.

DECREE
For the reasons assigned, defendant's convictions and sentences are affirmed.
NOTES
[1] Defendant was tried separately for the first degree murder of the victim of the aggravated rape charged in count three. His conviction and death sentence have been affirmed by this court. State v. Celestine, 443 So.2d 1091 (La. 1983).
[2] Assignments of Error Nos. 2 and 4 do not present reversible error nor do they involve legal issues not governed by clearly established principles of law. They will be treated in an appendix which will not be published but which will comprise part of the record in this case.
[3] La.Code Crim.P. art. 495.1 provided prior to its amendment by Acts 1978, No. 466, § 1:

The court, on application of the prosecuting attorney, or on application of the defendant shall grant a severance of offenses whenever:
(a) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
(b) if during the trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The Court shall consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.
[4] State v. Prieur, 277 So.2d 126 (La.1973).