479 So.2d 528 (1985)
STATE of Louisiana
v.
Bobby D. HORTON.
No. 85 KA 0291.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
*529 Bryan Bush, Dist. Atty. by Doug Simmons, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Public Defenders' Office, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Defendant, Bobby Dale Horton, was charged by grand jury indictment with the first degree murder of Pedro Bazan. This indictment was later amended to second degree murder and armed robbery to which the defendant entered pleas of not guilty. Defendant filed a motion to suppress his confessions which was denied by the trial court. Thereafter, defendant entered into a plea agreement whereby he pled guilty to the responsive crime of manslaughter, a violation of LSA-R.S. 14:31, with the other charges being nolle prosequied. This guilty plea was conditioned on his right to obtain appellate review of the trial court's denial of the motion to suppress. See State v. Crosby, 338 So.2d 584 (La. 1976).
In appealing the denial of his motion to suppress his confessions,[1] defendant contends that the trial court erred in its ruling in that the state failed in its efforts to prove the confessions were given freely and voluntarily. LSA-R.S. 15:451. Specifically, he argues that the evidence taken as a whole shows that his statements were obtained by direct or implied promises that his wife, who was being held in the Iberville Parish jail on the charge of accessory after the fact, would be released only if he confessed.
Edward N. Engolio, Jr., a detective with the Iberville Parish Sheriff's Office, testified that on Tuesday, March 27, 1984, the date of defendant's arrest, he interviewed defendant at the Iberville Parish jail. Present with him at this time were Detective Johnny Blanchard of the Iberville Parish Sheriff's Office and Detective Robert Howle and Sergeant Fuentes of the Baton Rouge Police Department. He testified that before the interview commenced, he advised defendant of his constitutional rights. Defendant initially denied involvement in the death of Pedro Bazan.
Engolio stated that he then asked the defendant if he knew that Joel Eichler was in custody; defendant replied that he did not. Joel Eichler was then brought into the interview room and according to Engolio, Eichler told the defendant that "... he told the police everything."
Engolio testified that several days prior to defendant's arrest, on March 18, 1984, he interviewed Joel Eichler who related to Engolio that he had assisted Horton in disposing of the victim's belongings and in fact led the officer not only to where these items had been disposed, but also to where the victim's automobile had been left.
Engolio testified that after Eichler left the room, Horton was willing to confess. Once it was established that the shooting had occurred in East Baton Rouge Parish and not in Iberville Parish, Detective Engolio stated that henceforth the interview was mainly directed by Detective Howle.
*530 Engolio testified that two day's prior to defendant's arrest, he arrested defendant's wife, Judy Horton. According to Engolio, were it not for the information provided by her, Bobby Horton could not have been found. He further stated that he believed that Judy Horton was released on bond on March 28, 1984, the day following her husband's arrest.
Engolio stated that he did not use force or violence upon defendant, nor did he make any promises to defendant in securing the waiver of defendant's constitutional rights or in obtaining the defendant's statement. On cross-examination, Engolio was asked if he remembered making the statement to defendant: "[W]e've got your wife in a cell and she isn't going to get out until you tell us what we want to hear?" Engolio denied making the statement and further testified that he did not recall any discussions with defendant regarding the release of his wife if he cooperated with the officers and confessed.
Officer Robert Howle of the Baton Rouge City Police Department testified that he was present during both of the defendant's interviews and that neither threats or promises were made nor force or violence used to have Horton waive his constitutional rights or give a statement. Howle stated that he did not recall any conversation between the officers and defendant at the Iberville Parish jail regarding defendant's wife. He testified that to the best of his knowledge, no one told defendant that his wife would be released or her charges dismissed if he cooperated by giving a statement. On cross-examination, Howle was asked: "[D]id you make the statement to [defendant], we've got to get this on tape to show your good faith in order to help your wife?" He replied that he did not recall any such statement being made.
Judith Ann Horton, defendant's wife, testified that she was arrested Monday, March 26, 1984, the day before her husband's arrest, on the charge of accessory after the fact to second degree murder. On Wednesday night, she was informed of her husband's confession and was released the next morning on a personal recognizance bond.
The defendant testified that he initially declined to make a statement. Because of his refusal, Horton stated that Engolio instructed another officer to bring Joel Eichler into the room. According to the defendant, upon entering the room, Joel began screaming "obscenities and everything" and was then removed. Defendant still refused to make a statement or respond to the officers' questioning.
Defendant testified that it was at this point that he was told by Engolio that, "[we] got your ole' lady back there in a cell and she ain't getting out until you tell us what we want to hear." Defendant testified that he then chose to use a "little barter system" with the officers by telling them he would give them a statement if his wife would be released from jail. Defendant further testified:
[W]e dickered a little bit and finally they, you know, they told me, said, what we'll see what we can do but we've got to have this that and the other, and all of this kind of cragarbage. Anduh so, then, they asked me some questions, I answered `em. You know, they had asked me some and I wouldn't answer some, but, I would answer certain questions. I don't remember which ones they were. And, they said, well, we've got to get this on a tape, because I was telling them part but I wouldn't tell them, you know, certain questions I wouldn't answer. And, then, they'd say, well, you know, how about this, and I'd say, yeah, yeah, yeah. So, they said they had to get a tape recorder in order touhuphold my end of the bargain.
In order for a confession to be admissible into evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. LSA-R.S. 15:451. Confessions obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, *531 are involuntary and inadmissible as a matter of constitutional law. The state has the burden of affirmatively proving the confession was free and voluntary. Therefore, if the defendant alleges police misconduct in eliciting a confession, it is incumbent upon the state to rebut these allegations specifically. State v. Welch, 448 So.2d 705 (La.App. 1st Cir.1984), writ denied, 450 So.2d 952 (La.1984).
The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Jackson, 381 So.2d 485 (La. 1980); State v. Welch, supra.
We have carefully reviewed the record and conclude that the trial court's denial of the motion to suppress the defendant's statements is supported by the evidence. The events surrounding the giving of the statements by the defendant, as related by the police officers, show that the confessions were made freely and voluntarily and not induced by threats, promises or coercion and that defendant had been properly given his Miranda rights. Although the defendant may have had a genuine concern for his wife's well-being, it appears from the record that the impetus for his making the confessions was the fact that Joel Eichler was in the police's custody and had implicated him in the murder of Pedro Bazan. When specifically asked during the taped statement made at the Iberville jail whether he had been subjected to any physical violence or threats or whether or not promises or inducements had been made by the officers, the defendant emphatically responded in the negative. He further stated: "The only thing I hold against the police is that you got my Boobear [wife, Judy Horton] in jail."
Thus, for the above reasons the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Defendant made an audio taped statement at the Iberville Parish jail, on the date arrested, March 27, 1984, and a videotaped statement the following day in Baton Rouge.