504 So.2d 1025 (1987)
STATE of Louisiana
v.
Ernest BROWN, Jr.
No. KA 86 0670.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
Writ Denied June 5, 1987.
*1027 Bryan Bush, Dist. Atty., Office of the Dist. Atty., Baton Rouge, by Louis Daniel, Asst. Dist. Atty., for plaintiff-appellee.
Alton Moran, Director, Office of the Public Defender, Baton Rouge, by David Price, Asst. Public Defender, for defendant-appellant.
Before EDWARDS, WATKINS and LEBLANC, JJ.
LEBLANC, Judge.
Defendant, Ernest Brown, Jr. was charged by bill of information with three counts of armed robbery in violation of La.R.S. 14:64. He was tried by jury, and found guilty as charged. Defendant was subsequently sentenced to three concurrent seventy-five year terms of imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. Defendant has appealed, assigning eight errors. However assignments of error numbers one and six were not briefed and are, therefore, considered abandoned. Uniform RulesCourts of AppealRule 2-12.4.

FACTS
The charges against defendant stem from three separate but related incidents, each of which occurred on the morning of August 30, 1985. The first took place at approximately 5:00 a.m., when Marcel Case went to the 7-Eleven store in the 5100 block of Plank Road in Baton Rouge, Louisiana. He parked his car near the dumpster in order to perform his daily task of gathering aluminum cans. As he was stooping over the dumpster, he was suddenly grabbed from behind, and felt a knife blade at his neck. He twisted himself around and saw defendant holding a large knife. Defendant told Mr. Case to hand over his money. When Mr. Case began yelling for help, defendant and another man dragged him behind the dumpster. He was stabbed in the right buttocks, forced to lie down on the ground and was robbed of his billfold, a pocket knife and two one-dollar bills. Mr. Case then saw defendant and the other man steal his car and flee from the scene. At trial Mr. Case positively identified defendant as the person who held the knife to his neck, but testified that defendant's hair was plaited on the day of the crime.
At approximately 7:00 a.m. that same morning, Ms. Joanne Strickland arrived at her office on South Foster Drive. She parked in the parking lot on the side of the building and got out of her car. She then noticed that a car had driven up and *1028 stopped in the driveway in front of the building. The passenger got out, walked around and stood talking to the driver. Ms. Strickland saw a co-worker, Claudia Hile, pulling into the parking lot; so she decided to wait and walk in with her. Ms. Hile parked in the space next to Ms. Strickland. As Ms. Strickland was waiting, the passenger from the car parked in the front came around the corner of the building holding a knife and yelling at her to give him her purse. He chased her around Ms. Hile's car, still yelling about the purse. During the chase, he stabbed Ms. Strickland in the left buttocks. When she turned and threw her purse at him, he picked it up and ran and got in the car of his accomplice, who then drove off. Ms. Strickland was able to call out the license number to Ms. Hile, who had witnessed the entire incident. The license number was the same, except for one digit, as the license of the car belonging to Mr. Case, the first robbery victim. At trial, Ms. Strickland could not positively identify defendant as the man who stabbed and robbed her. She could only remember that the perpetrator was a slim, black man with his hair fixed in short braids. Ms. Hile also could not positively identify defendant as the man who chased Ms. Strickland, testifying that defendant's hair was different from the perpetrator's, who appeared to have had braids.
At approximately 7:30 a.m. the same morning, Mrs. Lee Ann Hamilton stopped her car at a stop sign at the corner of Woodside and Glenmore Boulevard. While she was waiting for a car to go by, the car behind her bumped into her car. When the two men in the car did not get out of their car, she walked to the back of her car to check for damage. The passenger in the other car finally got out and she told him someone would have to call the police. The driver then got out and, as she was talking to him, she heard a click. She turned and saw the passenger holding a long, thin knife. He then quietly got in her car, started it and drove off. The driver of the other car got in it and also sped away. Mrs. Hamilton testified that her purse and some packages were in her car when it was stolen. At trial she described the man who drove off in her car as being tall and thin with braided hair. She could not positively identify defendant as this man. Mrs. Hamilton's description of the car that hit her matched that of Mr. Case's car, which had been stolen earlier that morning.
On September 2, 1985, Detective Frank Paixao saw Mrs. Hamilton's car, which had been reported stolen, in the Eden Park area of Baton Rouge. A chase ensued during which Mrs. Hamilton's car went into a ditch. Two subjects jumped from the vehicle and fled. Detective Paixao apprehended defendant, the driver, hiding in some weeds. The other suspect was never found. After defendant was arrested and advised of his rights, he made several statements to the police in which he admitted involvement in the commission of the charged offenses.

MOTION TO QUASH OR SEVER
In assignment of error number two (number one in brief), defendant contends the trial court erred in denying his motion to quash for misjoinder, or, alternatively, his motion to sever the three counts charged in the bill of information. He argues that he was prejudiced at trial by the joinder of these offenses. Specifically, defendant asserts that the failure of the last two victims to identify him increased the likelihood that the jury would rely upon the evidence of the first offense to find him guilty of the other two offenses.
Joinder of more than one offense in a single bill of information is governed by La.Code Crim. art. 493, which provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
*1029 In the instant case, the offenses charged are of the same or similar character. Furthermore, all three offenses occurred within a short period of time, arise out of one continuous transaction, and may be termed a "crime spree". See State v. Webb, 364 So.2d 984 (La.1978). Also, since the punishment for each offense is necessarily confinement at hard labor, the mode of trial necessary for each is the same. La.Code Crim.P. art. 782. Hence, the offenses were properly joined in the same bill of information. La.Code Crim.P. art. 493.
When an accused has been charged with two or more offenses in the same bill of information, he may apply for a severance of offenses under La.Code Crim.P. art. 495.1, which authorizes the trial court to grant a severance if it finds defendant is prejudiced by the joinder of offenses in the bill of information or for trial. Such a motion is addressed to the sound discretion of the trial court, and the court's ruling should not be disturbed absent a showing of an abuse of discretion. State v. Celestine, 452 So.2d 676 (La.1984). According to State v. Washington, 386 So.2d 1368, 1371 (La.1980), factors which the trial court should consider in determining whether prejudice may result from joinder include:
whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.
[Citations omitted.]
In State v. Celestine, supra, the Louisiana Supreme Court stated:
We have held that there is no prejudicial effect from the joinder of two or more offenses when the evidence of each offense is relatively simple and distinct, even though such evidence might not have been admissible in separate trials of the offenses because, with a proper charge, the jury can easily keep the evidence of each offense separate in its deliberations.

Celestine, 452 So.2d at 680.
It is necessary, therefore, to determine whether the jury knew defendant was charged with separate offenses each requiring separate verdicts and that the evidence of one offense could not be considered as evidence of the other offenses. See State v. Celestine, supra. We find that the instructions given to the jury by the trial court made each of these requirements clear. The jury was supplied with three separate verdict forms which named the offense charged and the responsive verdicts as to each, with the name of each corresponding victim. The jury did, in fact, return three separate verdicts.
Although there were similarities between the three charged robberies, each robbery presents a simple factual situation. Each offense was distinct and independent, involving a different victim. The state presented the evidence in an orderly, compartmentalized fashion making it easy for the jury to segregate the evidence on each count. The jury was required to distinguish the evidence and intelligently apply the law to three offenses, each involving a violation of the same statute. We find that the trial court's instructions, the separate verdict forms and the presentation of the evidence by the state in an orderly fashion enabled the jury to accomplish this task.
While it is true that two of the victims could not positively identify defendant as the robber, other evidence presented by the state clearly supported the guilty verdict rendered on these charges. The evidence of each offense was presented in such a manner as to allow the jury to clearly compartmentalize the evidence for those offenses. Coupled with the trial court's concise instructions to the jury, we find no danger existed that the evidence of the first offense was likely to influence the jury in its consideration of the evidence on the other offenses.
Therefore, we conclude defendant was not prejudiced by the joinder of these offenses *1030 for trial. Accordingly, the trial court did not abuse its discretion in denying defendant's motion to quash or, alternatively, for a severance of the offenses.
This assignment of error is without merit.

CHALLENGE FOR CAUSE
By assignment of error number three (number two in brief), defendant submits the trial court erred in granting the state's challenge for cause of prospective juror Lena Wade.
On voir dire examination, Wade stated that she would require the state to prove its case to an absolute certainty rather than beyond a reasonable doubt. She stated that she understood the difference between the two burdens, but maintained she would require the state to go further than required and remove any possible doubt. When asked if she could follow the law as instructed by the judge, she replied that she could try. Upon motion of the state, the trial court excused Wade for cause.
The state or defendant may challenge a juror for cause on the ground that the juror will not accept the law as given to him by the court. La.Code Crim.P. art. 797(4). A trial court is vested with broad discretion in ruling on a challenge for cause, and its ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Thompson, 489 So.2d 1364 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986).
A review of the voir dire examination convinces us that the trial court did not abuse its discretion in excusing Wade. Her answers revealed an honest doubt concerning her ability to accept the law as given to her.
In any event, the erroneous allowance to the state of a challenge for cause does not afford defendant a ground for complaint unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law. La.Code Crim.P. art. 800B; State v. Thompson, supra. The record reflects the state exercised only eight of its twelve peremptory challenges. Therefore, even if the trial court's ruling had been erroneous, it would not have had the prohibited effect of granting the state more peremptory challenges than it was entitled to by law. State v. Dufrene, 461 So.2d 1263 (La.App. 1st Cir.1984).
Accordingly, this assignment is without merit.

ADMISSIBILITY OF CONFESSIONS
In assignments of error numbers four and five (numbers three and four in brief), defendant alleges the trial court erred when it admitted into evidence a signed waiver of rights form and seven signed confessions. By assignment of error number seven (number five in brief), defendant contends the trial court erred in denying his motion for a new trial based on the court's alleged erroneous rulings on the admissibility of the confessions. Defendant argues that the inculpatory statements made by him were the result of impermissible inducements or promises by the police and, thus, were not freely and voluntarily given. Specifically, he argues that his statements were obtained by direct or implied promises that his girlfriend and his sister, who were also being detained by the police, would be released only if he confessed.
Defendant did not file a motion to suppress the confessions prior to trial. During the proceedings, a hearing to determine the admissibility of the statements was conducted outside the presence of the jury. The state presented the testimony of Detective Frank Paixao and Officer Greg Phares, the officers present during the confessions, in order to establish the necessary predicate for admitting the statements into evidence.
Paixao testified that after a chase, he apprehended defendant, who was driving a stolen vehicle belonging to Ms. Hamilton. Paixao stated he advised defendant orally of his Miranda rights at the scene of the arrest. Officer Phares advised defendant of his rights again at the police station, *1031 using a written form. Paixao witnessed defendant sign this advice of rights form.
Almost simultaneous with the apprehension of defendant, the police stopped a stolen yellow Cadillac and arrested the two black female occupants. Paixao testified that he spoke with the females at the station and they stated they were just driving the car for defendant. One of the females was defendant's sister, and the other was his girlfriend. After being advised of his rights, defendant asked Paixao if the two women would be put in jail. Paixao testified he told defendant that the females claimed defendant had stolen the car. Paixao then told defendant, "[I]f you get your business straight, I'll let `em go, you know, if they hadn't had anything to do with it, if they didn't know it was stolen."
After waiving his rights, defendant dictated seven statements to Officer Phares, who wrote them down and then read them to defendant. Defendant also read them himself and signed each one. In these statements, defendant confessed to the theft of the yellow Cadillac which the two females were driving, to the armed robberies which constitute the three charges in the instant case, and to two additional crimes committed on another date.
Both Paixao and Phares testified defendant appeared to understand his Miranda rights. No one threatened defendant, used force or violence upon him, promised leniency or in any way coerced defendant's statements. Although Phares advised defendant that he would inform the District Attorney's Office and the judge of defendant's cooperation, he made no promises regarding possible leniency or a charge reduction.
The trial court allowed all seven statements and the advice of rights form to be filed into evidence for purposes of the hearing on their admissibility. After arguments by counsel and after reading the statements, the court concluded they were freely and voluntarily made. The court held that the statements made by the officers did not constitute inducements or promises which would vitiate the free and voluntary nature of defendant's statements. The court ruled that it would allow the three statements concerning the charged offenses to be viewed by the jury, but held that the other four should not be so displayed.
In order for a confession to be admissible evidence, "it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises." La. R.S. 15:451. Confessions obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, are involuntary and inadmissible as a matter of constitutional law. The state has the burden of affirmatively proving the confession was free and voluntary. Therefore, if the defendant alleges police misconduct in eliciting a confession, it is incumbent upon the state to specifically rebut these allegations. State v. Horton, 479 So.2d 528, 531 (La.App. 1st Cir.1985), writ denied, 493 So.2d 1215 (La.1986).
The admissibility of a confession is in the first instance a question for the trial judge. In reviewing the trial judge's ruling, his conclusions on credibility are entitled to the respect due those made by one who personally saw the witnesses testify. State v. Rodrigue, 409 So.2d 556 (La.1982). The trial judge's conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. Id.
Upon careful review of the evidence presented, we find that the court's ruling is supported by the evidence. Although defendant may have had a genuine concern for the welfare of his sister and girlfriend, it is evident that he was in no way coerced into incriminating himself in order to corroborate the women's claim of innocence. Moreover, Officer Phares' statement that he would inform the District Attorney's office and the judge of defendant's cooperation does not constitute an inducement vitiating the free and voluntary nature of defendant's confessions. See State v. Sterling, 453 So.2d 625 (La. *1032 App.1st Cir.1984). Therefore, the trial court also properly denied defendant's motion for a new trial based on the allegation that the ruling on the admissibility of the confessions constituted prejudicial error.
Accordingly, these assignments of error are without merit.

EXCESSIVE SENTENCE
In assignment of error number eight (number six in brief), defendant contends his sentence is excessive. He argues that the trial court failed to consider any mitigating factors, such as his family ties or age, when it imposed sentence.
The Louisiana Code of Criminal Procedure sets forth the factors which must be considered by the trial judge before passing sentence. La.Code Crim.P. art. 894.1. Although the trial court need not recite the entire checklist found in La. Code Crim.P. art. 894.1, the record must reflect that it adequately considered these guidelines. State v. Davis, 448 So.2d 645, 653 (La.1984). When a trial court recites some of the article 894.1 factors, such as defendant's lengthy criminal record or the risk that defendant would commit other crimes, a factual basis for the sentence is present and it is not necessary for the trial court to enumerate each factor under the article. State v. Burns, 441 So.2d 1294 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1242 (La.1984).
The authorized maximum sentence for armed robbery is imprisonment at hard labor for ninety-nine years without benefit of probation, parole or suspension of sentence. La.R.S. 14:64. Herein, defendant was convicted of three counts of armed robbery and received three concurrent sentences of seventy-five years imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
We find that the trial court adequately satisfied the statutory criteria set forth in La. Code Crim.P. art. 894.1. In imposing sentence, the court noted that defendant is a second felony offender. The court also noted that defendant's arrest record includes a wide range of crimes, including attempted second degree murder, auto theft and simple burglary. Defendant also has one prior misdemeanor conviction, resulting from a felony arrest on charges of simple robbery. The court did, in fact, consider defendant's family ties and social history, noting that defendant's mother is a second felony offender with an extensive criminal record who is presently serving a sentence in prison. The court further noted that defendant is an eleventh grade dropout with absolutely no work history. The court also discussed the serious nature of the crime of armed robbery and the fact that two of the victims, who did nothing to provoke the offenses, were injured. The court opined that a lesser sentence would deprecate the seriousness of these offenses. The court also found that nothing in defendant's character or attitude indicates a likelihood that he will change his life of crime; nor did the court find any grounds whatsoever tending to excuse or justify defendant's conduct.
Finally, we note that the presentence investigation report recommended defendant be sentenced to a lengthy period of incarceration. Under the circumstances of this case, we find no abuse of the trial court's sentencing discretion. Hence, we do not find defendant's sentence to be excessive.
This assignment of error is without merit.
CONVICTIONS AND SENTENCES AFFIRMED.