764 So.2d 1122 (2000)
STATE of Louisiana
v.
Charles LEE.
No. 99-KA-1404.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 2000.
*1123 Laura Pavy, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant.
Court composed of Judge WILLIAM H. BYRNES, III, Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, Sr.
PLOTKIN, Judge.
On May 7, 1998, appellant Charles Lee was charged by bill of information with two counts of armed robbery. On October 24, 1998, he was found guilty as charged on both counts. On November 10, 1998, the trial court considered and denied a motion for new trial. The court then sentenced the appellant to fifteen years at hard labor on each count to run consecutively, without benefit of probation, parole or suspension of sentence. A motion to reconsider the sentence was denied. On January 14, 1999, the court found the appellant to be a second offender, vacated the previous sentences and resentenced the appellant to forty-nine and one-half years on each count, to run concurrently with each other. Another motion to reconsider the sentence was denied.
*1124 Appellant's counsel filed a brief on July 2, 1999. Appellant pro se filed a supplemental brief on January 24, 2000. The State has filed no response to date.

STATEMENT OF THE FACTS
On March 1, 1998, Omar was the cashier on duty at the Stop & Save gas station at 10833 Chef Menteur Highway when two men wearing masks entered the store. Omar's friend, Herberto Deraujo, was studying in the back office at the time. One of the perpetrators cursed and pointed a semi-automatic gun at Omar and demanded his money. The other perpetrator provided the bag in which Omar was to put the money. He also brought Deraujo from the back of the store. Omar filled the bag with the contents of the register, about twelve hundred dollars, then got down on the floor with Deraujo, as they were ordered to do. One of the perpetrators then ripped the phone out of the wall before both of the masked men ran out of the store. The phone was abandoned in the parking lot.
Omar called the police and locked the doors of the store until an officer arrived. Officer Henry Laurent responded to the call. He interviewed Omar and Deraujo, who advised Officer Luarent that the perpetrators were wearing ski masks. Nevertheless, Omar stated that he recognized one the perpetrators as a former regular customer named Charles. He testified that he recognized the perpetrator from his goatee, which he could see underneath the mask, from his black leather jacket and his voice. Omar told the officer and later testified that Charles was the more aggressive of the perpetrators, did the talking, demanded the money and held a gun to his head. Omar further testified that Charles had been caught stealing at the store two or three weeks prior to the robbery and was no longer permitted in the store. He stated that Charles was not charged with the prior theft; but was arrested on another charge outside of the store at that time. Omar also testified that, even though he was no longer allowed to enter the store, Charles often hung around outside the store between the time he was thrown out and the time of the robbery.
Detective Danny Wharton performed a follow-up investigation. He conducted research based on the information provided following the incident, and found the name Charles Lee. Detective Wharton first brought Omar a yearbook from Sarah Reed, the nearby high school, but Omar did not find the perpetrator's photograph there. Later, Detective Wharton compiled a photographic lineup that included the defendant. He presented the photographs to Omar, who positively identified the defendant as the perpetrator who held the gun to him and robbed the money in the cash register. Deraujo testified that he never saw the faces of the perpetrators, did not know either of them, and never attempted to identify either of them.
Omar and Deraujo initially told the police that there may have been only one gun. However, after discussing the matter, they agreed that both perpetrators were armed.
After Omar made the positive identification, Detective Wharton obtained an arrest warrant for the defendant and a search warrant for his home on Wright Road. The defendant was ultimately arrested at his cousin's apartment on Curran Street. Nothing was seized from the defendant's home; however, the black jacket he was wearing at the time of his arrest was seized because it matched the description of the jacket worn by the perpetrator.
On March 19, 1998, pizza delivery driver James Green was held up at gunpoint on Wright Road. He testified that when he arrived at the delivery address to deliver some food, the house looked abandoned. He noticed three young men in a driveway a few houses down. One of the men called to him that the pizza was for him. The man then walked over to Green's car. The other two men walked away.
*1125 When Green got out of the car to give the customer the pizza, the man pulled out a gun and ordered Green to give him his money. Green handed over all of his money, about one hundred dollars. He had to pull his pockets out to convince the perpetrator that he had no more money. The perpetrator then demanded the pizza and the buffalo wings. Green dropped the buffalo wings on the ground. The perpetrator ordered Green to pick up the wings and threatened to kill him for dropping the wings. The perpetrator then told Green to get in his car and never come around there again. The perpetrator walked away, then Green drove away.
Green called his employer, the Pizza Hut on Lake Forest, and was told to come back to the restaurant. The police department was called from the Pizza Hut. Officer Brian Renick responded, picked Green up at the restaurant and took him to Wright Road where Green pointed out the location of the robbery. Officer Renick observed some of the buffalo wings which were still on the ground there. Officer Renick then broadcast the location of the offense over the police radio, with a description of the perpetrator's body type and his blue steel automatic revolver. He then drove Green to the Seventh District station to be interviewed by the follow-up investigator, Det. Reginald Blanchard.
Det. Wharton, also of the Seventh District, heard the broadcast and recognized the address as the residence of Charles Lee, the suspect in the March 1 robbery. Det. Wharton proceeded immediately to the Seventh District station to meet with Det. Blanchard. The officers noted that the description of the gun and the body type also matched the description of Charles Lee given by the victim in prior robbery. Det. Wharton then provided Blanchard with a photo of Charles Lee and the other photos he used in the photographic lineup of the prior robbery. With this assistance, Det. Blanchard was able to present Green with a photographic lineup within a couple of hours of the March 19 incident. Green made a positive identification of the defendant.
The defendant took the stand and denied having committed the offenses, though he could not recall where he was at the time of either incident. He maintained that Omar was blaming him for the March 1 armed robbery because he was still angry with him for the altercation they had a couple of weeks prior to the robbery. He testified that Green was just mistaken in his identification. Lee admitted a prior conviction for stolen property, but alleged that he was merely a passenger in a car that he did not know was stolen. He testified that he pled guilty to that offense because the only disposition was going to be a three-year probation.

ERRORS PATENT REVIEW
Defendant raises the claim that the trial court failed to advise defendant of the time limitations that govern filing an application for post-conviction relief as required by La.C.Cr.P. art. 930.8(C). However, the failure to inform a defendant of this time limitation does not bestow an enforceable right. State v. Guy, 95-0899 (La.App. 4th Cir.1/31/96), 669 So.2d 517, 526, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102.
There were no other errors patent.[1]

ASSIGNMENT ONE
The appellant, through counsel, argues that the trial court erred by failing to sever the counts for trial. La.C.Cr.P. art. 493 provides:

*1126 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.[2]
The appellant concedes that, as both counts charge him with armed robbery, the joinder in a single bill of information was proper, citing State v. Horton, 458 So.2d 445, 446 (La.1984). The court in Horton held that the multiple counts of armed robbery were triable by the same mode of trial, were of similar character and thus were properly joined.
However, the appellant notes that a defendant properly charged with multiple counts in a single bill may request a severance of the offenses for trial. La.C.Cr.P. art. 495.1 provides:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
The trial court's ruling on a motion to sever should not be disturbed on appeal absent a showing of an abuse of discretion. State v. Williams, 418 So.2d 562, 564 (La. 1982). In State v. Washington, 386 So.2d 1368 (La.1980), the court noted that the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. See id. at 1371. The court there enumerated the following considerations in determining whether prejudice may result from joinder: "whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile." Id.
Prior to the enactment of the 1978 amendment to La.C.Cr.P. art. 495.1, Louisiana courts consistently held that, simultaneous trial of crimes of the same or similar character offenses may be joined only where the multiple offenses are mutually admissible as "other crimes" evidence. State v. Harris, 383 So.2d 1 (La. 1980); State v. Carter, 352 So.2d 607 (La. 1977).
In State v. Celestine, 452 So.2d 676 (La. 1984), the court held that, under the new article, severance of offenses joined solely because they are of the same or similar character is not mandated simply on the ground that the offenses would not be admissible at separate trials if the defendant is not prejudiced by the joinder. See id. at 680. In that case, the court found that two aggravated rapes were "strikingly similar," but not so unique that they would have been mutually admissible in separate trials under the Prieur rationale. See id. The court then looked to the jury instructions and determined that the jury was sufficiently apprised that there were two separate charges for which separate and *1127 independent verdicts should be rendered, and that evidence in each case should be considered only in that case. See id. at 680-81. The court thus concluded that the defendant was not prejudiced by the joinder of the offenses. See id. at 681.
In State v. Horton, 458 So.2d 445 (La. 1984), cited by the appellant, the court found no error in the joinder for trial of three counts of armed robbery stemming from three separate incidents. The court found that the prejudicial effect as to each crime of the evidence of the other crimes was outweighed by the probative value on identity, despite the possibility that the jury could accumulate evidence and hostility against the defendant, where one witness testified as to two of the robberies, and though the robberies were not signature crimes, they were similar offenses committed within a three-week period within a few feet of each other.
In State v. Davis, 637 So.2d 1012 (La. 1994), cert denied 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994), the court found that the defendant was not unfairly prejudiced by the denial of a motion to sever the trial of two homicides where evidence of each murder was "compartmentalized" and not confused, the jury was instructed that it should consider the evidence in each case, that it must render a separate verdict in each case, and that it need not return the same verdict as to each count, and defense counsel emphasized the point in his argument to the jury.
This court has found similarly in several cases. In State v. Labuzan, 480 So.2d 420 (La.App. 4 Cir.1985), this court found no error in the trial court's refusal to sever three charges of armed robbery where all three robberies occurred: during the night time, in the same area of the city, within a ten-day period, where each victim was traveling alone, each robbery presented a simple factual situation, and the prosecutor presented the evidence in an orderly, compartmentalized fashion, and the jury was sufficiently apprised of its function and responsibilities to protect the defendant from being prejudiced by the joinder.
In State v. Lewis, 557 So.2d 980 (La. App. 4 Cir.1990), writ denied 578 So.2d 922 (La.1991), defendant's two charges of attempted armed robbery were properly joined for trial where both robbery attempts involved two perpetrators, the attempted robberies occurred within minutes of each other, each perpetrator was armed with the same weapon in each robbery attempt, and the two incidents occurred in close proximity to each other.
In State v. Davis, 596 So.2d 358 (La. App. 4 Cir.1992), writ denied 604 So.2d 965 (La.1992), this court held that the defendant was not entitled to severance of armed robbery counts where it was doubtful that the jury would confuse the facts of the crimes since the events occurred on separate days and at different locations, the victims were different for each event, and the judge instructed the jury to consider each count separately and render a verdict on each count. In Davis, each of the four robberies were committed within a six-week period in the Uptown area, and one or more perpetrators threatened the victim with a gun.
Recently, in State v. Jackson, 99-2195 (La.App. 4 Cir. 10/6/99), 746 So.2d 638, this court held that the defendant was not entitled to severance of various charges with respect to one incident in which the defendant robbed three young girls and raped one of them, and a second incident that occurred less than one month later in which the defendant robbed two young women, where facts of the incidents were similar, the facts of the offenses were simple and distinct, and jurors would be able to keep the evidence separate and not become confused.
In the instant case, the offenses were armed robberies which occurred in the same general area of the city within three weeks of each other. They were both committed with guns by a threatening perpetrator. In the first case, the *1128 defendant was one of two masked perpetrators who robbed the cashier of a convenience store. In the second case, the perpetrator, alone and unmasked, robbed a pizza delivery driver in front of a delivery address.
Although the jury instructions were not transcribed, the evidence was presented in an orderly and compartmentalized fashion. The evidence necessarily overlapped in testimony which explained the nearly immediate photographic lineup in the second case. The timely lineup was possible because the address of the second robbery was the same as the address of the suspect in the first robbery, who had already been identified in a photographic lineup. Both victims positively identified the defendant from photographic lineups. The defendant made a blanket denial as to both offenses, but could not recall where he was at the time of either offense, despite the fact that he was arrested shortly after the second offense.
The appellant argues that, considering the nature of the offenses, the evidence of both allowed the jury to accumulate hostility towards him. However, considering the demeanor of the perpetrator in each case, individually, the jury would likely have developed hostility toward the defendant, even if the offenses were tried separately.
Considering the orderly presentation of the cases, the positive identifications, and the demeanor of the perpetrator in both cases, it is unlikely that the jury was confused by the joinder or that the defendant was prejudiced.

ASSIGNMENT TWO
The appellant pro se argues that the trial court erred by finding him to be second offender. Specifically, he argues that the State proved only that he was arrested on a prior offense, and that someone with the same name was convicted of a prior offense. He avers that the evidence was insufficient to prove his identity as the Charles Lee previously convicted. The appellant refers to the testimony of the fingerprint expert, Officer Glen Burmaster, who testified that the fingerprint on the bill of information of the predicate conviction was insufficient to make a comparison. However, Officer Burmaster did testify that the fingerprint on the arrest register for that offense was a positive match to the fingerprint of the appellant taken at the multiple bill hearing.
To obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Hawthorne, 580 So.2d 1131 (La.App. 4th Cir. 1991). Various methods are available to prove that the defendant on trial is the same person convicted of the prior felony offense, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race and date of birth. State v. Westbrook, 392 So.2d 1043 (La.1980); State v. Curtis, 338 So.2d 662 (La.1976); State v. Pitre, 532 So.2d 424 (La.App. 1st Cir.1988), writ den. 538 So.2d 590(La.1989); State v. Savoy, 487 So.2d 485 (La.App. 3rd Cir.1986). The mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity. Curtis, 338 So.2d at 664. In State v. Westbrook, 392 So.2d 1043 (1980), the supreme court found that along with defendant's name, his driver's license number, sex, race, and date of birth were sufficient evidence for the State to carry its burden of proving that this defendant was the same person previously convicted of another felony.
State v. Henry, 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 325.
In Henry, the State was unable to produce the fingerprints for one of the predicate *1129 offenses listed in the multiple bill of information. However, the State showed the person convicted in the prior offense had the same bureau of identification number, the same date of birth, and the same social security number as the defendant. This court concluded that the State produced sufficient proof of the defendant's identity as the person convicted in the prior offense.
In the recent case of State v. Anderson, 99-1407 (La.App. 4th Cir.1/26/00), 753 So.2d 321, the fingerprints on the bill of information of a predicate conviction were not suitable for identification; however, the fingerprints on the arrest register matched those of the defendant. The State was able to match the arrest register with the certified copy of the predicate conviction through the defendant's name, date of birth, date of offense, case number and complainant's name. In addition, defendant's name, date of birth, social security and bureau of identification number were the same as the person who pled guilty to the predicate conviction. The court held that the State met its burden in proving that the appellant was the same person convicted of that predicate offense.
In the instant case, the arrest register of the predicate offense, which contained the identifiable fingerprints, was compared with the arrest register included in the packet certifying the conviction of the predicate. The arrest registers were identical in the defendant's name, date of birth, BFI number, item number, and offense charged. The testifying officer opined that the arrest register appeared to be an exact copy of the arrest register containing the identifiable prints. The officer further noted that the arrest number, which is unique to each arrest, was the same on both documents.
Considering the information linking the defendant to the arrest and conviction in the predicate, the trial court did not err in finding the appellant to be a second offender.

ASSIGNMENT THREE
The appellant pro se further argues that the trial court erred by imposing an unconstitutionally excessive sentence and failing to consider the sentencing guidelines in La.C.Cr.P. art. 894.1. Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person... to cruel, excessive or unusual punishment." A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4 Cir.1985).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La. 1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982). If adequate compliance with La.C.Cr.P. article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Guajardo, 428 So.2d 468 (La.1983); State v. Quebedeaux.
When the trial judge fails to sufficiently set forth the factors considered in the imposition of this sentence, there is no need to remand the matter for resentencing if the record clearly shows an adequate factual basis which supports the sentence imposed. State v. Welch, 550 So.2d 265 (La.App. 4 Cir.1989), writ denied, 94-0437 (La.6/21/96), 675 So.2d 1071.
The trial court has the authority to reduce a mandatory minimum sentence provided by the multiple offender statute for a particular offense and offender if the sentence would be constitutionally excessive. State v. Pollard, 93-0660 *1130 (La.10/20/94), 644 So.2d 370. Because the Habitual Offender Law has been held constitutional, the minimum sentences it imposes upon multiple offenders are presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. To rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is exceptional in that, because of unusual circumstances, the defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Young, 94-1636 (La. App. 4 Cir. 10/26/95), 663 So.2d 525, 531, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223.
In the instant case, the appellant was sentenced to forty-nine and one-half years at hard labor, the mandatory minimum sentence for a second offense armed robbery. In addition, the trial court specified that the sentences be served concurrently when, considering that the offenses arose from separate incidents, they could have been ordered to run consecutively. La.C.Cr.P. art. 883.
The appellant correctly notes that the trial court failed to enumerate the factors considered in the imposition of the sentence. Nevertheless, the record indicates that the defendant committed two violent offenses in which he threatened one or more victims with a gun. In addition, the appellant provided no special circumstances or reasons, at sentencing or in his pro se brief, why the trial court should have deviated from the minimum sentence set forth by the legislature. Accordingly, the appellant's sentences are not unconstitutionally excessive.

CONCLUSION
The judgment of the trial court is AFFIRMED.
NOTES
[1] This writer notes that the appellant was sentenced as a second offender on both counts of a single bill of information. However, the Supreme Court's interpretation of La. R.S. 15:529.1 in State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991), prohibits sentence enhancement of same-day convictions only if those offenses arose from a single incident or event. State v. Lawrence, 98-0348 (La.App. 4th Cir.12/13/99), 752 So.2d 934; State v. Ward, 94-0490 (La.App. 4th Cir.2/29/96), 670 So.2d 562, writ denied, 97-0642 (La.9/19/97), 701 So.2d 165.
[2] La.C.Cr.P. art. 493.2 was added in 1997 to provide that, "[n]otwithstanding the provisions of Article 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." In those cases, the trial jury shall be composed of twelve jurors, ten of whom must concur to render a verdict.