557 So.2d 980 (1990)
STATE of Louisiana
v.
Michael LEWIS.
No. 89-K-1389.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1990.
*981 Michael Lewis, In Pro. Per.
Harry F. Connick, Dist. Atty., New Orleans, for respondent.
Before BYRNES, WILLIAMS and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Relator, Michael Lewis, and his codefendant were charged with and convicted of attempted armed robbery. Relator was subsequently sentenced to serve forty (40) *982 years at hard labor without benefit of probation, parole, or suspension of sentence on each count, with the sentences to run concurrently. On appeal the convictions and sentences were affirmed. See State v. Haywood, 516 So.2d 196 (La.App. 4th Cir. 1987).
Relator is before this court for review of a trial court judgment denying his application for post conviction relief.
Relator articulates four claims: (1) that the evidence was insufficient to sustain a conviction for attempted armed robbery, (2) that the offenses should not have been joined for trial, (3) that the trial court erred in denying relator's motion to sever his trial from that of his codefendant, (4) that his trial and appellate counsels were ineffective.
The facts of this case as stated in the appellate court opinion are as follows:
"On the evening of April 13, 1985, Maxwell Higdon left his home on Esplanade Avenue to visit a friend who lived nearby in the French Quarter. While waiting for his friend to answer the doorbell, Higdon noticed two black males on the other side of the street. The men approached him and one of them demanded the gold chain and ring he was wearing. Higdon refused, and the shorter of the two men fired a gun at him, but missed. When Higdon attempted to take the gun away, the taller of the men hit him in the face with a heavy chain. The two men then fled the scene.
"That same night, Donna Anderson and her fiancee, Gregory Corrales, a police officer with the San Francisco police department, were walking back to their hotel in the French Quarter when they were approached by the defendants. According to the couple's testimony at trial, Lewis grabbed for Ms. Anderson's purse. He also demanded Mr. Corrales' money. When Mr. Corrales refused, Lewis hit him with a heavy chain which Mr. Corrales described as one that would be used to secure a motorcycle. As Mr. Corrales stumbled from the blow, his fiancee ran into a nearby hotel and summoned the police. In the meantime, Mr. Corrales struggled with Lewis, who continued to beat him with the chain. After a short scuffle, the two defendants then ran off.
"Mr. Corrales pursued his attackers and yelled for passers by to stop the men. During the chase, Haywood fired a gun at Mr. Corrales. Fortunately, the shot missed. At this point police officers, who had received a report of shots being fired in the vicinity, intervened. As they arrived at the scene, the officers saw several white males chasing two black males. One of the white males was screaming that he had just been robbed by the men he was chasing. One of these men, later identified as Reginald Haywood, was arrested. Pursuit of the second suspect, was unsuccessful.
"Mr. Corrales made an on the scene identification of Haywood as one of his attackers. Haywood was wearing a holster at the time of his attest [sic]. A gun was found inside the fence of a nearby Park. The second defendant, Michael Lewis, subsequently turned himself in to the Jefferson Parish Sheriff's Department.
"In the meantime, Mr. Higdon the first victim, had been wandering the area in a daze from the blow to the head he had received from Lewis. He first attempted to go to a friend's house for help, but no one was home. He then decided to return to the scene of the crime and call the police. When he arrived he saw the police, who had just arrested Haywood following the second incident, and recited his story to them. He identified Haywood as the man who shot at him, and was then taken to the hospital for treatment of his facial injuries. He is still facing surgery for reconstruction of his face and nasal cavity. He has also seen psychiatrists in an attempt to overcome the psychological trauma of his experience.
"At trial, Lewis took the stand and denied that he or Haywood attacked or attempted to rob either victim. He claimed that Mr. Corrales tried to arrest him for disturbing the peace and that a fight ensued when he challenged Corrales' authority to make the arrest. He disclaimed any *983 knowledge of a gun, and denied ever encountering Mr. Higdon."
Relator first claims that the evidence adduced at trial was insufficient to sustain his convictions. Reviewing this claim, we must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988).
The essential elements of the offense of armed robbery are set out in La.R.S. 14:64(A) as:
"[T]he taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon."
La.R.S. 14:27 defines an attempt as follows:
"A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
"B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
"C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt."
Relator contends that the evidence showing that both defendants were armed with weapons, and used them only after the victims refused to surrender their property, tends to prove only an attempted simple robbery.
We find no merit to defendant's argument. Both defendants were armed with weapons at the time they accosted their victims, the relator with a heavy chain, his codefendant with a firearm. In the first robbery they demanded the victim's gold chain and ring, and when the victim refused to turn them over, Haywood pulled his gun and shot at him. Relator then struck the victim with the heavy chain, breaking his nose in three places. In the second robbery, relator attempted to grab the purse of the female victim. When her male companion intervened, relator demanded his money, and when the companion refused, relator struck him with the heavy chain he was carrying.
We find that, viewing the evidence as a whole in a light most favorable to the prosecution, any rational trier of fact could have found that the relator had the specific intent to take something of value from the person of the two victims by the use of force, while armed with a dangerous weapon, and did an act for the purpose of and tending directly toward accomplishing that object.
Relator next claims that the two offenses should not have been joined for trial. The defense did not move to sever the offenses prior to trial. However, since relator claims that his counsel's failure to do so amounts to ineffective assistance, we will address this issue.
La.C.Cr.P. art. 493 provides for the joinder of offenses if the offenses charged are of the same or similar character or are based on the same act or transaction, or on two or more acts or transactions connected together, if in addition, the offenses joined are triable by the same mode of trial. The offenses in this case fit within this definition. Both perpetrators were involved in the two robbery attempts, which occurred within minutes of each other. During the first and second robbery attempts each perpetrator was armed with the same *984 weapon, relator with a heavy chain, his accomplice with a firearm. Both incidents occurred in the French Quarter within minutes of each other and in close proximity to each other. The offenses were therefore properly joined under La.C.Cr.P. art. 493.
La.C.Cr.P. art. 495.1 provides for severance of offenses and states:
"If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."
Generally, there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime. State v. Labuzan, 480 So.2d 420 (La. 1985); State v. Horton, 458 So.2d 445 (La.1984); State v. Celestine, 452 So.2d 676 (La.1984), cert. denied, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 154 (1984).
In the case at bar nothing in the transcript indicates that a severance would or should have been granted. The victims all individually identified the perpetrators. The facts were not at all complex, and the offenses were exactly the same. We find no merit to this claim.
Relator's next claim is that the trial court erred in denying his motion to sever his trial from that of his codefendant, Reginald Haywood.
La.C.Cr.P. art. 494 provides in pertinent part:
"Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses....."
La.C.Cr.P. art. 704 provides:
"Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance."
Generally, to be entitled to a severance, the defendant must meet the "antagonistic defenses" test. State v. Deboue, 496 So.2d 394 (La.App. 4th Cir.1986), writ denied, 501 So.2d 229 (La.1987). When one defendant makes a statement inculpating the other, and the State plans to use that statement at a joint trial, the defendant is forced to defend against the State and his codefendant. In such a case justice usually requires a severance. State v. Webb, 424 So.2d 233 (La.1982).
In the case at bar relator's codefendant, Haywood, made a statement to police in which he did not admit to committing crimes, but did say that he had been with the relator on the evening of the offenses. This is the manner in which police discovered the relator's identity. However, relator subsequently turned himself in to authorities. He never denied that he had been with Haywood. Haywood never took the witness stand and his statement was never admitted into evidence. The relator testified at trial, admitting to an encounter with one robbery victim, Mr. Corrales. He denied any knowledge of the robbery of Mr. Higdon.
The record evidence shows that the relator and his codefendant did not present defenses in conflict with one another. The relator was at no time required to defend against both the State and his codefendant. Therefore, we find no merit to this claim.
Relator's final claim of error is that his trial and appellate counsel were ineffective. He contends that his appellate counsel was ineffective because he failed to raise claims one, two and three on appeal. We have found that none of these claims has any merit, and therefore, find no merit to this claim of ineffective assistance as to relator's appellate counsel.
Relator's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See also State v. Fuller, 454 So.2d 119 *985 (La.1984). Relator must show that counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is deficient when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Counsel's deficient performance will have prejudiced the relator if he shows that the errors were so serious as to deprive the relator of a fair trial. Relator must make both showings in order to prove that counsel was so ineffective as to require reversal. Strickland, supra 104 S.Ct. at 2064.
Relator first claims that his trial counsel should have objected or otherwise prevented the prosecutor from referring to Haywood's statement. Relator's contention has no basis in fact. The trial transcript shows that counsel for relator's codefendant, Haywood, asked a question of a police officer regarding the statement made by the codefendant. The prosecutor did not ask a similar question of this police officer.
Later in the trial the prosecutor was questioning a different police officer when he asked "Then what did you do?" The answer given by the officer referred to the police learning of relator's identity from the statement given by the codefendant in which he mentioned that he had been with the relator on the evening in question. The prosecutor did not pursue the issue and asked no direct questions regarding statements made by Haywood.
In neither instance cited by relator does there appear to have been either an opportunity or a reason for relator's counsel to have objected. Moreover, considering the weight of the evidence against the relator, he has not shown any prejudice because of these brief references to his having been identified by Haywood. This is so especially when one considers that the relator admitted having been in a confrontation with the victim, Mr. Corrales, immediately after which Haywood was apprehended while relator made good his escape.
Relator also contends that his counsel "allowed" his codefendant's counsel to shift the blame to him. Apparently, relator is referring to the fact that Haywood's counsel questioned the victims of the second robbery, and relator, about his client's participation. Since relator's own testimony clearly exculpated Haywood's involvement in even the altercation with Mr. Corrales, it does not appear that the codefendant's counsel improperly "shifted" the weight of the crime onto relator as he contends. In any event, relator fails to show what prejudice, if any, he sustained as a result of the questions posed by his codefendant's counsel. At no time did Haywood's counsel suggest or accuse relator of having committed the crimes alone. The victim's testimony, as well as the fact that Haywood was the one arrested at the scene and immediately identified as the perpetrator, would have prevented such a defense.
We find no merit to relator's claim of ineffective assistance of counsel.
Finding no error in the trial court's ruling, and no merit to any of relator's claims, we deny relator's writ.
WRIT DENIED.