JAMES F. McKAY III, Judge.
 

 | tThe defendant was charged by bill of information with two Counts; Count 1 possession of heroin pursuant to La. R.S. 40:966(C)(1) and Count 2 felon in possession of a fire arm pursuant to La. R.S. 14:95.1. Following a trial by jury the defendant was found guilty as charged as to Count 1. The district court declared a mistrial as to Court 2. The defendant appeals his conviction and sentence for the possession of heroin pursuant to La. R.S. 40:966(C)(1). After a careful review of the record we affirm the defendant’s conviction and sentence.
 

 STATEMENT OF THE CASE:
 

 On July 12, 2007, the defendant was charged with possession of heroin (count one) and possession of a firearm by a convicted felon (count two), violations of La. R.S. 40:966(0(1) and 14:95.1, respectively. On July 17, 2007, defendant entered pleas of not guilty. On September 13, 2007, defense counsel filed motions to suppress the evidence and the statement. Following a motion hearing, the matter was taken under advisement. On September 21, 2007, the trial court denied the motion to suppress the evidence. On August 12, 2008, defense counsel filed a motion in limine seeking to exclude from trial any reference to the ^defendant’s prior convictions and to force the state to accept the defendant’s stipulation on the prior convictions; the motion was denied.
 

 Trial began on November 17, 2008, and was continued to January 27, 2009. On that date, defendant pleaded guilty pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976). He was sentenced on each count to serve ten years at hard labor with credit for time served and concurrent with each other. On February 11, 2009, the district court granted the defendant’s motion to withdraw his pleas of guilty and granted him a new trial. On March 10 and 11, 2009, defense counsel filed a motion to declare La.C.Cr. P. art. 782(A), which allows non-unanimous jury verdicts, unconstitutional, and a motion to sever the counts, respectively; both motions were denied on March 18, 2009. On April 15, 2009, defense counsel filed a motion for jury charges and an oral motion to recuse the district court judge. On April 20, 2009, defense counsel filed a written motion to recuse the district court judge; the
 
 *398
 
 motion was denied on April 15, 2009. On May 5, 2009, a twelve person jury was impaneled. The defense counsel moved for a mistrial when evidence of a prior conviction was inadvertently published to the jury; the motion was denied. A supervisory writ was filed in this court; the writ was denied, 2009-K-0596. On that same day, the motion to recuse was withdrawn by defense counsel’s supervisor. On May 7, 2009, following a jury trial, the defendant was convicted on the charge of possession of heroin. The jury was unable to render a verdict on the charge of possession of a firearm by a convicted felon; the trial court declared a mistrial on that charge. On June 4, 2009, the defendant was sentenced to serve ten years at hard labor with credit for time served.
 

 |..STATEMENT OF THE FACTS
 

 On May 11, 2007, Detective Sislo, accompanied by approximately ten detectives and officers, executed a no knock search warrant for the premises located at 8600 Chef Menteur Highway, apartments 10 and 11. Detective Sislo entered apartment 11. Officers Charles Love and Bronson Gettridge entered apartment 10. Officers Love and Gettridge informed Sislo that they had confiscated a nine millimeter handgun and seven packets of a tan substance wrapped in
 
 tin foil from the
 
 defendant. The handgun and tin foils were placed into evidence and deposited in the New Orleans Police Department’s evidence and property room.
 

 Detective Sislo testified that the search warrant was obtained pursuant to information received from a confidential informant. The informant told police that a man named Ian, and another man called Santa Clause, a.k.a. Norman Clark, were selling drugs from the suspect location. Acting on this information the police conducted an investigation on May 10, 2007 to corroborate the informant’s tip. The informant was observed going to the suspect location and making a narcotics purchase which he turned over to Detective Sislo. Neither the informant nor Detective Sislo had any contact with the defendant. Detective Sislo stated that the targets of the search warrant were Ian and a man named Richard Salazar, Norman Clark’s roommate. He further testified that he had no knowledge if the defendant lived in apartment 10 or 11. Following the search, he inventoried all items seized from both apartments. Detective Sislo testified that the defendant was inside apartment 10 when the search warrant was executed.
 

 On May 11, 2007, Officer Charles Love participated in the execution of a no knock search warrant for the premises located at 8600 Chef Menteur Highway, |4apartment 10. Upon entering the apartment Officer Love observed the defendant sitting at a table. The defendant stood up and began to run towards the back of the apartment. Officer Love and the other officers ordered the defendant to get on the floor. In attempting to handcuff the defendant, Officer Love observed that the defendant’s hands were clenched. The defendant was ordered to relax and stop resisting. While handcuffing the defendant his hand opened and Officer Love observed a clear plastic bag containing tin foil wrapped packets. The defendant was rolled onto his side, and Officer Love’s partner, Officer Get-tridge, conducted a pat down search for weapons. Officer Gettridge discovered a handgun in the defendant’s waistband.
 

 Officer Love testified that two men, a woman and several children were also in the apartment when the search warrant was executed. He stated that the defendant resisted the officers; he and his partner struggled to place the defendant in handcuffs. He denied that the defendant told him that he did not live in the apartment. He stated that the defendant was
 
 *399
 
 not the target of the search warrant. Once the defendant was in handcuffs he was taken outside so that other officers could conduct the search of the apartment. No money or drug paraphernalia was found on the defendant.
 

 On May 11, 2007, Officer Bronson Get-tridge participated in the execution of a no knock search warrant for the premises located at 8600 Chef Menteur Highway, apartment 10. Upon entering the apartment Officer Gettridge observed the defendant get up from a table, attempt to run towards the back of the apartment, stumble and fall. The defendant was detained on the floor. The defendant moved his hands underneath his body as if he were concealing a weapon or some other object. The defendant was handcuffed. Officer Gettridge’s partner, Officer Love, IfiObserved several foil wrapped packets in the defendant’s hand. Officer Gettridge searched the defendant and found a handgun in his waistband. The handgun was turned over to Detective Sislo.
 

 Officer Gettridge testified that Ian Ballard and William Jones were also in the apartment when the search warrant was executed. He stated that the defendant did not comply with the officers when they ordered him to stop and get down. The defendant fell as he attempted to run towards the rear of the apartment. He did not remember if the defendant told him that he did not live in the apartment.
 

 Officer Joseph Pollard, latent fingerprint examiner for the New Orleans Police Criminal Records Department, took the defendant’s fingerprints and compared them to a certified arrest register belonging to defendant.
 
 [1]
 
 He concluded that the defendant’s fingerprints matched those on the arrest register. Officer Pollard testified that he did not participate in the arrest of the defendant or in the execution of the search warrant.
 
 [2]
 

 Charell Arnold, an investigator for the Orleans Indigent Defender’s Office, testified that she conducted an investigation of 8600 Chef Menteur Highway, apartments 10 and 11. In the course of her investigation she learned that Ian Ballard lived in apartment 11.
 

 Ms. Arnold testified that on May 11, 2007 she was in Chicago and had no personal knowledge of what occurred at the time the search warrant was executed.
 

 On May 11, 2007, Aneaka Ballard, cousin of the defendant and wife of Ian Ballard, was inside apartment 11 at the time the search warrant was executed; the 16apartment belonged to her husband, Ian. She had gone to the apartment to pick up her five children who were being babysat by their father, Ian, while she was in the hospital with another child. The defendant arrived shortly after she arrived. Another man, Melius, was also in the apartment. On a table she observed a handgun in a bag. Within minutes the police kicked in the door, entered and knocked defendant to the floor. The police were hollering, “where Ian, ... where Ian Ballard, who is Ian Ballard?” The defendant was yelling, “f — k, f — k”. Ms. Ballard testified that she did not see the defendant holding anything in his hands and did not see the police take a gun from him.
 

 Ms. Ballard testified that the defendant was sitting at a table next to Melius when
 
 *400
 
 the police entered the apartment. Immediately after entering the apartment the police ordered her and her children to go outside. She admitted that she could not see if the defendant had anything in his hands when he came into the apartment. She admitted to having a prior conviction for forgery.
 

 The defendant testified that he had a conviction for first-degree robbery in 2000 and for simple robbery in 2002. He stated that Ian Ballard is his cousin’s husband. The night before his arrest he slept over at his cousin Randy’s apartment, which was across the court from Ian’s apartment. He and Randy had an argument, and Randy told him to leave. He went to Ian’s apartment to wait for his girlfriend, Katina, to pick him up and take him home. Ian, Melius, Aneaka and Aneaka’s children were inside the apartment. Inside the apartment he observed a handgun and some silver foil packs on a table. He stated that he had nothing to do with those items, and he could not tell Ian what to do in his own home. He was sitting on a stool waiting for his girlfriend to arrive when the police entered the apartment. He was knocked to the floor. One of the officers placed a gun to his face and ^another placed his knee in his back; he was handcuffed. He attempted to turn over to ask what was happening, but the police ordered him to “shut the ¥ up, shut the T up.” The police were yelling, “where’s Ian, who’s Ian.” He denied being in possession of heroin or a handgun.
 

 He denied that he associated with Ian or Melius. He stated that he was sitting at the table with Melius to tell him about the fight he had with Randy. He admitted that it was a bad decision not to leave the apartment when he observed the handgun and drugs on the table. He accused the arresting officers of lying that they found him in possession of heroin and a handgun.
 

 ERRORS PATENT
 

 A review for errors patent reveals none.
 

 DISCUSSION
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 By his first assignment of error, the defendant asserts that the trial court erred by denying his motion to sever the counts. The defendant argues that because the counts were tried together, the jury was unduly influenced by the State suggesting that he was a “dangerous man in possession of a firearm.” He attributes his conviction for possession of heroin to the jury learning of his prior conviction for simple robbery used to support the possession of a firearm by a convicted felon charge.
 

 La.C.Cr.P. art. 493 provides:
 

 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting | ¿parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
 

 Nonetheless, La.C.Cr.P. art. 495.1 provides that if the defendant or the State is prejudiced by the joinder of offenses in a bill of information or at trial, “the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.” In
 
 State v. Deruise,
 
 98-0541, p. 7 (La.4/3/01), 802 So.2d 1224, 1282, the Court discussed the standard for reviewing a trial court’s ruling on a motion to sever counts:
 

 A motion to sever is addressed to the sound discretion of the trial court, and the court’s ruling should not be disturbed on appeal absent a showing of an
 
 *401
 
 abuse of discretion.
 
 Brooks,
 
 541 So.2d at 804 (citing
 
 State v. Williams,
 
 418 So.2d 562, 564 (La.1982)). In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. In determining whether joinder will be prejudicial, the court should consider the following: (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (8) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.
 
 Id.
 
 (quoting
 
 State v. Washington,
 
 386 So.2d 1368, 1371 (La.1980)). However, the fact that evidence of one of the charges would not be admissible under
 
 State v. Prieur,
 
 277 So.2d 126 (La.1973), in a separate trial on the joined offense, does not per se prevent the joinder and single trial of both crimes, if the joinder is otherwise permissible.
 
 State v. Davis,
 
 92-1623, p. 9 (La.5/23/94), 637 So.2d 1012, 1019 (citing
 
 State v. Celestine,
 
 452 So.2d 676 (1984)). Finally, there is no prejudicial effect from joinder of two offenses when the evidence of each is relatively simple and distinct, so that the jury can easily keep the evidence of each offense separate in its deliberations.
 
 Brooks,
 
 541 So.2d at 805.
 

 See also
 
 State v. Carter,
 
 99-2234, pp. 34-35 (La.App. 4 Cir. 1/24/01), 779 So.2d 125, 145, where this court stated: “Generally, ‘there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime,’ ” citing
 
 State v. Lewis,
 
 557 So.2d 980, 984 (La.App. 4 Cir.1990). A defendant bears a heavy burden of proving prejudicial joinder of offenses, and he must make a clear showing of prejudice.
 
 Lewis, supra.
 

 In its written reasons for denying the severance, the trial court cited
 
 State v. Morris,
 
 99-3075 (La.App. 1 Cir. 11/3/00), 770 So.2d 908. In
 
 Morris,
 
 the appellate court considered whether trial of multiple offenses including the charge of possession of a firearm by a convicted felon was prejudicial. The defendant argued that the jury’s exposure to his prior conviction, as predicate to his firearm charge, implied to the jury that he had a criminal disposition. This argument was rejected as conclusory and unsupported by the facts. Furthermore, the appellate court found that the evidence of the defendant’s guilt on the other charges was overwhelming, and any failure to sever was harmless error.
 

 Applying the
 
 Washington
 
 factors, it does not appear that the trial court abused its discretion by denying the defendant’s motion to sever the counts. The defendant has not shown that the jurors were confused by the presentation of the evidence or that they could not segregate evidence as to the two counts.
 

 In addition, the defendant has not shown either of the last two Washington factors, either that the joinder of these two offenses caused the jury to infer a criminal disposition on his part, or that the joinder made the jury hostile. Indeed, although the jury found him guilty as charged as to the possession of heroin count, it failed to return a verdict on the felon in possession of a firearm count. Officers ImLove and Gettridge testified that the clear plastic bag containing foils of heroin was clenched in the defendant’s hand when he was detained and handcuffed. The evidence of
 
 *402
 
 his guilt for possession of heroin was overwhelming. The defendant has failed to show prejudice or that he was hindered in presenting a defense on the possession of heroin charge. Accordingly, the trial court did not abuse its discretion in denying the motion to sever the counts. This assignment has no merit.
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 Before the commencement of the trial, the defendant unsuccessfully filed a motion
 
 in limine
 
 offering to stipulate that he had been convicted of a felony that was a predicate offense pursuant to La. R.S. 14:95.1 and requesting that the State be precluded from introducing evidence of his prior conviction. The defendant asserts the district court erred by denying the motion.
 

 The law prohibiting certain felons from possessing firearms is codified in La. R.S. 14:95.1 and reads in pertinent part:
 

 A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony ..., to possess a firearm or carry a concealed weapon.
 

 Possession of a firearm by a convicted felon requires proof of: 1) the possession of a firearm; 2) a previous conviction of an enumerated felony; 3) absence of the ten year period of limitation; and 4) general intent to commit the offense. La. R.S. 14:95.1.
 

 Defendant, citing
 
 Old Chief v. United States,
 
 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), argues that his trial was tainted by unfair prejudice because the jury was told the name and nature of his previous felony conviction. In
 
 Old Chief,
 
 the defendant, who had previously been convicted of assault causing serious bodily injury, was charged with various federal crimes, including being a felon in possession of a firearm pursuant to 18 U.S.C. Section 922(g)(1). In reversing the defendant’s conviction, the United States Supreme Court concluded that in a felony possession of a firearm case pursuant to Section 922(g)(1), the government may not reject the defendant’s offer to stipulate to the prior conviction, and evidence of the name and nature of the prior conviction are inadmissible.
 

 The Louisiana Supreme Court in
 
 State v. Ball,
 
 99-0428, (La.11/30/99), 756 So.2d 275, declined to follow
 
 Old Chief,
 
 first because the United State Supreme Court’s decision was not based on constitutional principles which would be binding on the states, but instead was based on the specific language of 18 U.S.C., Section 922, and second because the Louisiana statute defines the crime by specific enumerated pri- or offenses, contrary to the broad definition in the federal statute which was the subject of
 
 Old Chief.
 

 In
 
 Ball
 

 [3]
 

 ,
 
 the Court stated:
 

 Further, to fully and fairly implement the defendant’s desired result in this case, more would be required than merely accepting the defendant’s stipulation and prohibiting the state from mentioning the name of the prior felony conviction. In addition, the trial court could be required to prohibit the reading of the indictment in its entirety, which in this case contained the name and date of the prior conviction as well as the sentence imposed, and the judge would not be allowed to fully instruct the jury as to the law governing the case, both of which are required under general princi-
 
 *403
 
 pies of law ... La.C.Cr.P. art. 483 ... under Louisiana Code of Criminal Procedure article 802, “[t]he court shall charge the jury: (1) As to the law applicable to the case; ... Thus, the trial judge must fully advise the jury as to the law of La. R.S. 14:95.1, and that includes naming the prior felony convictions that disqualify a defendant from firearm possession”.
 

 Lastly, as recognized by the majority in
 
 Old Chief,
 
 the general rule is that “the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it ... To force the state to accept defendant’s stipulation would frustrate this general rule as well”.
 

 Ball
 
 at p. 280.
 

 Accordingly, proof of a prior specifically enumerated felony conviction is an essential element pursuant to La. R.S. 14:95.1, and evidence of name and nature of the defendant’s prior conviction may be presented to the jury by the state. This assignment is without merit.
 

 ASSIGNMENT OF ERROR NUMBER 3
 

 Prior to trial, defense counsel moved to have the district court declare Louisiana’s statutory scheme which permits non-unanimous jury verdicts unconstitutional; the motion was denied. The district court subsequently charged the jury that it did not need to reach a unanimous verdict to convict the defendant. The defendant asserts that the district court erred in denying the motion.
 

 The defendant relies upon
 
 U.S. v. Booker,
 
 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)
 
 Blakely v. Washington,
 
 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004);
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002);
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000);
 
 Jones v. United States,
 
 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999).
 

 The punishment for possession of heroin is confinement at hard labor. See La. R.S. 40:966(C)(1). Louisiana Constitution article I, § 17(A) and La.C.Cr. P. art. 782(A) provide that in cases where punishment is necessarily at hard labor, the ease shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Under both state and federal jurisprudence, a criminal conviction by a less than unanimous jury does not violate a defendant’s right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment. See
 
 State v. Belgard,
 
 410 So.2d 720, 726 (La.1982) and
 
 Apodaca v. Oregon,
 
 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).
 

 The defendant’s reliance on
 
 Blakely, Ring, Apprendi, Jones,
 
 and
 
 Booker,
 
 is misplaced. These Supreme Court decisions do not address the issue of the constitutionality of a non-unanimous jury verdict; rather, they address the issue of whether the assessment of facts in determining an increased penalty of a crime beyond the prescribed statutory maximum is within the province of the jury or the trial judge, sitting alone. Nothing in these decisions suggests that the jury’s verdict must be unanimous for a defendant’s conviction to be constitutional. Accordingly, La. Const. art. I, § 17(A) and La.C.Cr.P. art. 782(A) are not unconstitutional and, hence, not violative of the defendant’s Sixth Amendment right to trial by jury.
 
 Apodaca v. Oregon,
 
 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). In addition, this Court rejected this argument in
 
 State v. Tillman,
 
 2008-0408 (La.App. 4 Cir. 3/4/09), 7 So.3d 65. Furthermore, in
 
 State v. Bow
 
 
 *404
 

 en,
 
 215 Or.App. 199, 168 P.3d 1208 (Or.Ct.App.2007), the court ruled that a defendant was not entitled to request a jury instruction forbidding a conviction upon a less than unanimous jury verdict. The United States Supreme Court denied certiorari in
 
 Bowen v. Oregon,
 
 — U.S. —, 130 S.Ct. 52, 175 L.Ed.2d 21, (10/05/09). This assignment of error is without merit.
 

 ^CONCLUSION
 

 For the above and forgoing reasons we affirm the defendant’s conviction and sentence.
 

 AFFIRMED.
 

 [1]
 

 . The defense stipulated to Officer Pollard's expertise in the taking, examination and comparison of fingerprints.
 

 [2]
 

 . Following Officer Pollard's testimony, the state and the defense stipulated to the expertise of Sergeant Harry O’Neil in the identification of narcotics and, that if Sergeant O'Neil testified, he would state that the substance in the foil packs taken from the defendant tested positive for heroin.
 

 [3]
 

 . In
 
 Ball,
 
 the defendant was arrested for stealing a minivan, a rifle and a shotgun. Upon learning that he had a prior conviction for simple burglary of an inhabited dwelling, defendant was charged and tried as a felon in possession of a firearm.