JOY COSSICH LOBRANO, Judge.
Lin this consolidated matter, the defendant, Ronald Warner, appeals his convictions and sentences for possession with the intent to distribute heroin and possession with the intent to distribute cocaine. For the reasons that follow, we affirm Warner’s convictions and sentences.
The State of Louisiana charged Warner with one count each of aggravated battery (La. R.S. 14:34); being a convicted felon in possession of a firearm (La. R.S. 14:95.1); possession with the intent to distribute heroin (La. R.S. 40:966A); and possession with the intent to distribute cocaine (La. R.S. 40:967a).[1] He pled not guilty. Prior to the trial, Warner moved to sever the battery and firearm counts from the drug counts. The trial court denied the motion as to the battery count but granted it as to the firearm count. Trial was held as to the battery and drug counts, at the conclusion of which a twelve-person jury found him guilty of second degree 12batter,y (La. R.S. 14:34.1) and guilty as charged as to the drug counts. Warner filed a motion for new trial, which the trial court denied. The State also filed a multiple bill as to the drug counts, alleging that Warner was a fourth felony offender. After a hearing on the bill, the trial court found him to be a fourth offender. The trial court sentenced Warner as a first offender on the battery count to serve five years at hard labor. It sentenced him to serve fifty years at hard labor as a fourth offender for the heroin conviction and to serve thirty years at hard labor as a fourth offender for the cocaine conviction, the sentences to be served concurrently. Warner appealed.
This court subsequently remanded the case to the trial court for consideration of Warner’s second motion for new trial. On August 15, 2013, the trial court granted the motion for new trial as to the battery count but denied it as to the drug counts. Counsel objected and noted his intent to seek writs, which he filed in State v. War *718 ner, 2013-K-1316. By order of this Court, Warner’s writ and appeal were consolidated. In the meantime, the State nolle pro-sequied, the battery and firearm counts.
Although the trial court granted the motion for new trial as to the battery count, and the State subsequently nolle prose-quied this count, evidence concerning this count was adduced at trial. Warner’s argument with respect to his motion to sever alleges prejudice with respect to the drug counts because they were tried at the same time before the same jury as the battery count. Thus, the following fact | ^summary includes evidence adduced as to the battery count as well as the drug counts.
With respect to the battery count, Detective Tariisha Sykes testified that she investigated the battery by shooting of Ronald Burton that occurred late on the morning of July 11, 2011 at the corner of France Road and N. Villere Street. , Although Det. Sykes did not respond to the scene, she testified that officers responding to the call of the shooting found Burton, who had been shot in the leg. The responding officers indicated that Burton identified the shooter as “Rilo,” whom he had known for several years. Det. Sykes interviewed Burton that evening, after he had been released from the hospital, and based upon what he told her, she compiled a photographic lineup that contained Warner’s photo. She showed the lineup to Burton, who identified Warner as the person who shot him. Det. Sykes insisted that the identification was not the product of any force, coercion, threats, or promises, nor did she indicate what photograph' he should choose. She stated that Burton told her that he knew the shooter because he had purchased heroin from him in the past, and he owed the shooter $15.00 for heroin at the time of the shooting. The State played an audio cassette of the identification. Based upon the identification, Det. Sykes obtained an arrest warrant for Warner.
On cross-examination, Det. Sykes testified that the investigating officers found neither blood at the scene nor any witnesses who saw a green vehicle in which the shooter allegedly fled. She described Burton as calm, and he did not appear to be under the influence of any drugs. She testified that the police learned |4that the shooter fled in a green vehicle driven by a heavyset, light skin African-American woman, but they had no leads as to her identity.
Burton appeared at trial in a prison uniform and denied that Warner was the man who shot him. He admitted that he was awaiting trial on a charge of burglarizing his mother’s home, that he had prior convictions for possession of cocaine in 1988 and for being a convicted felon in possession of a firearm in 1992, and that he used heroin in July 2011. He stated that he knew Warner for more than fifteen years, but he never purchased heroin from Warner, nor did he owe him any money. He admitted that he may have told people these facts, but he stated that he did so in anger.
Burton testified that he got shot on July 11, 2011, while standing outside a small grocery store at the corner of France Road and N. Villere Street. He testified that as he left the store, someone fired multiple shots at him, hitting his leg. Burton claimed that he did not recall telling anyone that Warner shot him, and if he did so, he was wrong. He stated that he knew many men named “Rilo,” and he did not remember a green vehicle at the scene. He insisted that the gunman walked up to him from around the corner and shot him from a distance of thirty to forty yards. He stated that he ran after being shot, and when police officers arrived, they thought *719 he had shot himself and asked where he had put the gun. Burton testified that he remained at the hospital for five or six hours, and he stated that he had used heroin on that day. He insisted that he was woozy when he was at the police station, and he did not remember what he told the police. He acknowledged that he [schose someone from the lineup, but he reiterated that he made the identification in anger. He admitted that when he gets out of jail, he will return to the same neighborhood where Warner lives. He averred that he wanted to testify at trial so that he could say that Warner did not shoot him.
With respect to the drug counts, Detective Willard Pearson testified that on August 9, 2011, he executed a search warrant at 1932 Gallier Street. The officers had obtained the warrant pursuant to an investigation, the target of which was Warner. Det. Pearson testified that on that date, he set up a pre-execution surveillance and saw Warner sitting on the porch of the double at that address. After about ten minutes, he saw Warner receive a call on his cell phone, leave the porch, and meet a pickup truck that had pulled up to the residence. Det. Pearson saw Warner reach into the pickup truck with his clenched fist and hand the passenger an unknown object. The pickup truck drove off, and Warner then went inside the residence. Although Det. Pearson asked other officers to stop the truck, they were unable to do so.
Det. Pearson called for other officers to come to the residence to execute the warrant, but before they could do so, Warner exited the residence and left the scene. Det. Pearson testified that he radioed other officers to stop Warner, and then he saw an African-American female leave the residence through a long window that was next to the front door, which was closed and barred. The officers stopped her, and by that time Warner was returned to the residence by the officers who stopped him. Warner indicated that his girlfriend and his daughter were Rinside the residence. While officers detained Warner outside, Det. Pearson and other officers entered the residence through the side window. Det. Pearson testified that there was no furniture in the first two rooms, but he looked up and saw something sticking out of one of the light fixtures. He retrieved the item, which was a clear plastic bag containing rice, plus individual pieces of plastic bags containing brown powder or off-white rock-like substances. The remaining rooms included a bedroom with both men’s and woman’s clothing, a child’s bedroom, and a kitchen. The officers found a box of sandwich bags and a scale in the kitchen, as well as a box of razor blades. The officers also found an Enter-gy bill in the name of Maria Lewis and a hospital bill in Ms. Lewis’ name. They obtained a lease in Ms. Lewis’ name from the owner of the double, who lived next door. In the child’s room, they found a five-year-old girl.
On cross-examination, Det. Pearson testified that he did not see an exchange of money for the object that Warner gave the person in the pickup truck, nor could he see the people inside the truck or the license plate number of the truck. He also testified that the officers found no money, guns, or drugs on Warner’s person, nor were there guns or money inside the house. He stated that he knew of no statements that Warner made concerning the drugs found inside the residence. On redirect, Det. Pearson testified that Ms. Lewis was not the target of the investigation. He stated that when the officers ran Warner’s name in the NCIC computer, they pulled up his arrest warrant for aggravated battery by shooting.
*720 17Petective Benja Johnson testified that he and his partner stopped Warner near the corner of Desire and N. Galvez Streets, approximately a block from the Gallier Street residence. His partner advised Warner of his rights and that they had a search warrant for his residence. Det. Johnson stated that a relative who was in the car with Warner when he was stopped called his girlfriend. Once they returned Warner to the residence, Warner indicated that his girlfriend and his daughter were locked inside. Det. Johnson testified that he remained outside with Warner while other officers executed the search warrant.
Criminalist Corey Hall, qualified as an expert in testing and analysis of controlled dangerous substances, tested four of the ten small bags containing brown powder and four of the eleven small bags containing the off-white rock objects. He testified that the brown powder tested positive for heroin, and the rocks tested positive for cocaine.
Louis Russo, an assistant district attorney, interviewed Burton as a part of his duties in screening the case. He testified that Burton told him that Warner, whom he had known for a long time and who was his heroin dealer, was the person who shot him. Russo stated that Burton told him that Warner shot him over a $15.00 drug debt. Burton told him that Warner drove up in a green truck, got out, spoke with him, and then re-entered the truck. Burton said that the truck went around the corner, and when it reappeared, Warner exited once again, shot Burton, and then sped off. Russo described Burton as very cooperative during the interview. On cross-examination, Russo stated that he interviewed Burton while |8Burton was at work because he was unable to contact Burton by phone and insisted that Burton was very clear that Warner shot him.
The State recalled Det. Sykes, who reiterated that Burton told her that he had purchased drugs from Warner the week before and owed Warner $15. She also reiterated that Burton positively identified Warner in the lineup, and he never told her that the shooter was anyone other than Warner. On cross-examination, Det. Sykes stated that Burton told her that Warner walked up and shot him; he did not mention any conversation between him and Warner. She also stated that Burton was not under the influence of any drugs when she interviewed him.
A review of the record reveals two patent errors as to the sentences that the trial court imposed on the two drug charges. La. R.S. 40:966B(1), the applicable sentencing statute for possession with the intent to distribute heroin, provides that at least five years of the sentence shall be served without benefit of probation, or suspension of sentence. Similarly, La. R.S. 40:967B(3)(b), the sentencing statute for possession with the intent to distribute cocaine when the State proves a minor child was present in the home at the time of the offense, mandates that a minimum of fifteen years shall be served without the benefit of parole, probation or suspension of sentence. The court here failed to include these restrictions on either sentence. However, as per La. R.S. 15:301.1A and State v. Williams, 2000-1725 (La.11/28/01), 800 So.2d 790, the sentence is deemed to have been imposed with these restrictions of benefits, even in the absence of the trial court’s failure to delineate them. Thus, there is no need for this court to correct the sentences. See |9 State v. Barnes, 2011-1421, p. 9 (La.App. 4 Cir. 9/19/12), 100 So.3d 926, 933;[2] State v. *721 Phillips, 2003-0304 (La.App. 4 Cir. 7/23/03), 853 So.2d 675. Thus, this court need not take any action to correct this error.
There are no other patent errors.
In his sole assignment of error raised in his appeal, Warner contends that the trial court erred by denying his motion to sever the battery count from the drug counts. He asserts that the court failed to consider whether the jury may have been confused by the State trying the drug counts with the battery count; whether the jury would be able to segregate the evidence concerning the battery count from that concerning the drug counts; whether he would be confounded in presenting defenses to the various counts; whether the jury would infer a criminal disposition on his part from the inclusion of the facts of the battery count; and whether the facts of the battery count made the jury hostile with respect to the drug counts.
In its response, the State initially avers that Warner has failed to preserve this claim because he did not object to the court’s refusal to sever the battery count from the drug counts. The State points out that only the prosecutor objected to the court’s ruling and only to that part that severed the convicted felon in possession of a firearm count from the other three counts, even though the prosecutor offered to sever that count from the other three. However, Warner’s motion sought to sever the battery count from the drug counts, and his counsel argued that both of the counts involving a gun should be severed from the drug counts; thus, although he | indid not formally note his objection to the court’s failure to sever the battery count, we will consider the issue in this appeal.
The joinder of offenses is governed by La.C.Cr.P. art. 493, which provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offense charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
As per La.C.Cr. P. art. 495.1, the court may order a severance of offenses “or provide whatever relief justice requires” if the defendant or the State shows prejudice to the defendant or the State by the join-der of offenses at trial. The Court discussed the standard for reviewing a trial court’s ruling on a motion to sever counts in State v. Deruise, 98-0541, p. 7 (La.4/3/01), 802 So.2d 1224, 1232:
A motion to sever is addressed to the sound discretion of the trial court, and the court’s ruling should not be disturbed on appeal absent a showing of an abuse of discretion. [State v.] Brooks, 541 So.2d [801] at 804 [ (La.1989) ] (citing State v. Williams, 418 So.2d 562, 564 (La.1982)). In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. In determining whether joinder will be prejudicial, the court should consider the following: (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged *722 would be used by the jury to infer a criminal disposition; and (5) whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. Id. (quoting State v. Washington, 386 So.2d 1368, 1371 (La.1980)). However, the fact that evidence of one of the charges would not be admissible under State v. Prieur, 277 So.2d |11 26 (La.1973), in a separate trial on the joined offense, does not per se prevent the joinder and single trial of both crimes, if the joinder is otherwise permissible. State v. Davis, 92-1623, p. 9 (La.5/23/94), 637 So.2d 1012, 1019 (citing State v. Celestine, 452 So.2d 676 (1984)). Finally, there is no prejudicial effect from joinder of two offenses when the evidence of each is relatively simple and distinct, so that the jury can easily keep the evidence of each offense separate in its deliberations. Brooks, 541 So.2d at 805.
See also State v. Adams, 2010-1140 (La.App. 4 Cir.6/1/11), 68 So.3d 1165.[3]
Moreover, “[a] defendant bears a heavy burden of proving prejudicial join-der of offenses and he must make a clear showing of prejudice.” State v. Galle, 2011-0930, p. 18 (La.App. 4 Cir. 2/13/13), 107 So.3d 916, 928.[4] As this court noted in State v. Carter, 99-2234, pp. 34-35 (La.App. 4 Cir. 1/24/01), 779 So.2d 125, 145: “Generally, ‘there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime,’ ” Id. (quoting State v. Lewis, 557 So.2d 980, 984 (La.App. 4 Cir.1990)).
In Galle, the defendants were charged with one count each of possession of a firearm by a convicted felon and attempted second degree murder, and the trial court denied their motion to sever the counts for trial. On appeal, this court rejected their claim that this ruling violated their right to a fair trial by unduly prejudicing them. This court noted that evidence adduced as to each count was clearly distinct, thereby allowing the jury to segregate the offenses and the evidence as to them, and this court rejected the claim that the jury was confused by |12the joinder of the claim. This court also found that the defendants did not show that they were confounded in presenting a defense by the joinder of the charges.
Likewise, this court rejected a claim of prejudicial joinder of offenses in State v. Grimes, 2011-0984 (La.App. 4 Cir. 2/20/13), 109 So.3d 1007,[5] where the defendant sought to sever counts as to one victim from counts as to another victim. This court noted that while the offenses were essentially the same as to each victim (various counts of kidnapping, rape, and other sexual crimes), the evidence of each count was presented in a relatively simple and distinct manner that the jury could keep separate during deliberations. In State v. Cooper, 2012-0174 (La.App. 4 Cir. 7/10/13), 120 So.3d 844, the defendant argued that the trial court erred by denying his motion to sever the counts against him, three armed robbery counts and a count of possession of a stolen vehicle. This court rejected this claim, noting that the armed robbery offenses were similar in nature and occurred within a few days of each other in the same general location of the *723 city at roughly the same time. The stolen vehicle charge was connected to one of the armed robberies. This court also pointed out that the evidence as to each count was presented in an orderly fashion, allowing the jury to segregate the charges and evidence. There was no indication that the defendant was confounded in presenting a defense, and the fact that the jury acquitted the defendant of one of the armed robbery counts showed that the joinder did not render the jury hostile toward him.[6]
This court also rejected the defendant’s severance claim in State v. Lomax, 2009-1129 (La.App. 4 Cir. 3/24/10), 35 So.3d 396, where the defendant was [ ^charged with possession of heroin and being a convicted felon in possession of a firearm. This court noted the orderly and separate presentation of evidence as to the two offenses, and there was no indication of any confusion on the jury’s part. This court rejected his claim that the joinder of the two offenses caused the jury to infer a criminal disposition on his part, given the fact that the jury did not convict him on the firearms count.
In the ease sub judice, Warner contended in his motion to sever that trying the battery and firearm counts with the drug counts would cause the jury to infer a criminal disposition on his part, as well as confuse the jury. At trial, he additionally argued that the offenses should not be tried together because over a month elapsed between the shooting and the drug arrests. He now argues that while the court did not specifically accept the State’s argument that the offenses were res gestae of each other, it failed to determine if joinder of the shooting to the drug offenses would be prejudicial to him. He asserts that the court failed to consider the factors set forth in State v. Washington, 386 So.2d 1368, 1371 (La.1980): would the jury be confused with the joinder; would it be able to segregate the evidence as to each charge; would joinder confound his ability to present defenses; was the join-der being used to infer a criminal disposition on his part; and would the joinder make the jury hostile.
The State presented evidence in an orderly manner and separately as to the shooting and the drug offenses, easily allowing the jury to segregate the offenses and the evidence as to each offense. There was no indication that the jury was confused by the joinder of these counts, nor was there any evidence, nor does Warner argue, that his ability to present a defense was confounded by the joinder of the counts. As in Lomax and Cooper, there also was no showing that the jury 1 uwas hostile to Warner or found that the joinder proved a criminal disposition on his part because although it convicted him as charged in the drug counts, it found him guilty of a lesser included offense with respect to the battery count. Warner did not meet his “heavy burden” of showing prejudice from the joinder; thus, he failed to show that the court abused its great discretion in denying his motion to sever the battery count from the drug counts. This assignment of error has no merit.
In response to the Warner’s motion, this court remanded the case for a determination of his motion for new trial based upon newly-discovered evidence. On remand, the trial court granted the motion as to the battery count, but it denied it as to the drug counts.[7] Warner *724 objected to the denial as to the drug counts and noted his intent to seek writs, which he subsequently filed and which this court consolidated with his appeal. In his consolidated writ, Warner argues that the trial court erred in denying the motion with respect to the drug counts because the withheld evidence was material to the drug counts as well as to the battery count. He further urges this court to adopt the “spillover test” set forth in a few federal cases to find that the trial court erred in its ruling. This claim has no merit.
Prior to sentencing, Warner filed a motion for new trial wherein he alleged that the verdict was contrary to the law and evidence and that the ends of justice would be served by the granting of the motion. La.C.Cr.P. art. 851(1) and (5). The court denied the motion. After sentencing, Warner learned of the existence of an initial incident report wherein Burton indicated that he did not know the identity of the shooter, and he obtained the 911 tape wherein Burton stated that he did not know who shot him. Warner then filed his motion for new trial based upon this | ^newly-discovered evidence, asserting that the State withheld this Brady evidence that was material to his convictions. On remand, the State conceded the issue as to the battery count, but argued it was not material to the drug counts. Defense counsel argued that this evidence also had an impact on the drug counts because if the jury believed that Warner shot Burton over a drug debt, this belief would have affected the jury’s deliberation on the drug counts. The court agreed that this evidence was material to the shooting, and it granted the new trial on that count. However, it found that the shooting and the drug counts were two separate incidents, about which the jury was instructed separately, and this withheld evidence had no impact as to the drug counts. The court then denied a new trial as to the drug counts. Warner argues that this ruling was in error.
Warner’s second motion was filed pursuant to La.C.Cr.P. art. 851(3), which mandates the granting of a new trial whenever “[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during trial, is available, and if the evidence had been introduced at the trial, it would probably have changed the verdict or judgment of guilty.” This court discussed the review of the denial of a motion for new trial based on a claim of newly-discovered evidence in State v. Smith, 2011-0091, pp. 32-33 (La.App. 4 Cir. 7/11/12), 96 So.3d 678, 696-697:[8]
In order to obtain a new trial based on newly discovered evidence, a defendant must show: (1) the new evidence was discovered after trial; (2) the failure to discover the evidence at the time of trial was not due to the defendant’s lack of diligence; (3) the evidence is material to the issues at trial; and (4) the evidence is of such a nature that it would probably have changed the verdict of guilty. La.C.Cr.P. art. 851(3); State v. Brisban, 2000-3437, p. 12 (La.2/26/02), 809 So.2d 923, 931; State v. |16 Bright, 98-0398, pp. 25-26 (La.4/11/00), 776 So.2d 1134, 1149. A trial court assessing the legal merits of a motion for new trial is given considerable latitude in evaluating the impact of newly discovered evidence on the verdict. State v. Brooks, 98-0693, p. 12 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 821. The trial court has much discretion in ruling on a motion for new trial. State v. Bureaux, *725 98-0097, p. 4 (La.App. 4 Cir. 5/26/99), 736 So.2d 318, 321. Review of the trial court’s ruling is limited to determining whether the trial court abused its discretion. State v. Labran, 97-2614, p. 6 (La.App. 4 Cir. 5/26/99), 737 So.2d 903, 907.
In State v. Johnson, 2007-2034 (La.10/9/09), 23 So.3d 878, 881, the Louisiana Supreme Court explained that the test to be employed in evaluating whether newly discovered evidence warrants a new trial is not simply whether another trier of fact might render a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial, [footnote omitted] The Johnson court also held that when presented with a motion for a new trial based on newly discovered evidence, the trial judge’s duty is not to weigh the new evidence as though he were a jury determining guilt or innocence, but rather is the narrow duty of ascertaining whether there is new material fit for a new jury’s judgment.
In the case sub judice, the 911 tape and the initial incident report were not produced by the State until after trial. There is no argument that this evidence was exculpatory as to the shooting and should have been produced to Warner pri- or to trial on that count. The issue then is whether this evidence was material to the drug counts as well, mandating that the new trial be granted as to these two counts as well. The Due Process clause of the Fourteenth Amendment requires that the State disclose to the defense evidence that is favorable to the defense and is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Crawford, 2002-2048 (La.App. 4 Cir. 2/12/03), 848 So.2d 615. This requirement includes evidence that impeaches a witness whose credibility or reliability may determine guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. |17 763, 31 L.Ed.2d 104 (1972); State v. Bright, 2002-2793 (La.5/25/04), 875 So.2d 37. Although the State need not disclose its entire file to the defense, it must disclose “evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to the defendant which is material to guilt or punishment.” State v. Rosiere, 488 So.2d 965, 970 (La.1986).
The Court in U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985), defined materiality: “The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability5 is a probability sufficient to undermine confidence in the outcome.” The Court further discussed “materiality” in Kyles v. Whitley, 514 U.S. 419, 434-435, 115 S.Ct. 1555, 1565-1566,131 L.Ed.2d 490 (1995):
Although the constitutional duty is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant’s acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). ... Bagley’s touchstone of materiality is a “reasonable probability” of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, under *726 stood as a trial resulting in a verdict worthy of confidence. A “reasonable probability” of a different result is accordingly shown when the Government’s evidentiary suppression “undermines confidence in the outcome of the trial.” Bagley, 473 U.S., at 678, 105 S.Ct. at 3381.
The second aspect of Bagley materiality bearing emphasis here is that it is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal | ischarge does not imply an insufficient evidentiary basis to convict. One does not show a Brady violation by demonstrating that some of the inculpa-tory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.
See also State v. Haywood, 2004-2097 (La.App. 4 Cir. 6/15/05), 907 So.2d 168.
Nonetheless, the mere fact that exculpatory evidence is withheld does not automatically entitle a defendant to a new trial. As the Court noted in Bright:
Nevertheless, it is important to note that Brady and its progeny do not establish a general rule of discoverability, and not every case in which it is discovered post-trial that favorable evidence was withheld by the State will result in a reversal of the conviction. A prosecutor does not breach any constitutional duty to disclose favorable evidence unless the “omission is of sufficient significance to result in the denial of the defendant’s right to a fair trial.” United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). For purposes of Brady’s due process rule, a reviewing court determining materiality must ascertain:
not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair tnal, understood as a trial resulting in a verdict woHhy of confidence. [Emphasis supplied.]
Kyles v. Whitley 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). See also, State v. Strickland, 94-0025, p. 38 (La.11/1/96), 683 So.2d 218, 234. Thus, the reviewing court does not put the withheld evidence to an outcome-determinative test in which it weighs the probabilities that the petitioner would have obtained an acquittal at trial or might do so at a second trial. Instead, a Brady violation occurs when the “evi-dentiary suppression ‘undermines confidence in the outcome of the trial.’ ” Kyles, 514 U.S. at 434, 115 S.Ct. at 1566 (quoting Bagley 473 U.S. at 678, 105 S.Ct. at 3381).
Bright, 2002-2793, p. 6, 875 So.2d at 42.
|1flIn the case sub judice, the evidence that was withheld concerned Burton’s assertion, both to the 911 operator and to the responding officers, that he did not know the man who shot him. All parties agreed that this evidence was material to his conviction for the shooting. Warner now argues that it was also material to his drug convictions because the State’s theory was that he was a drug dealer who shot Burton over a drug debt. He asserts that evidence of the sale of heroin to Burton led the jury to conclude that the heroin and cocaine that were found in the Gallier Street residence belonged to him, although there were no documents that tied him to the residence. He asserts that had the jury heard the 911 tape and read the police report wherein Burton denied knowing *727 who shot him, it probably would not have found that he possessed the heroin and cocaine found in the residence, which was not the same place where the shooting occurred.
However, as noted by the State, at trial Burton denied that Warner shot him or that he owed Warner any money for drugs or had purchased any drugs from him, and Burton insisted that he identified Warner only out of anger for an unspecified reason. Thus, evidence that Burton said that he did not know who shot him would only have been cumulative to Burton’s own testimony. As also noted by the State, the fact that Warner may not have been the person who shot Burton would not preclude him from possessing the drugs found inside the residence almost a month later. Moreover, the evidence adduced as to the drug counts showed that the officer who conducted the pre-execution surveillance of the residence observed Warner engage in what appeared to be a drug transaction from the residence just prior to the execution of the warrant. In addition, Warner had a key to the residence on his person; men’s clothing was found in one of the bedrooms in the residence; and Warner told the officers that his daughter and his 12ogirlfriend were locked inside the residence. Given these factors, we do not find that the introduction of the 911 tape and the incident report, both of which indicated that Burton could not identify his assailant, would have likely changed the jury’s verdict as to the drug counts.
Finally, Warner’s argument that the trial court should have applied the “spillover test” to grant a new trial as to the drug counts also has no merit. This doctrine as set forth in cases such as United States v. Arledge, 553 F.3d 881 (5th Cir.2008), concerns whether evidence that is properly admitted as to some counts at trial but improperly admitted as to others would have prejudiced the defendant as to those counts. He points out that a key factor in applying a “spillover test” is that the counts are closely related and have some degree of overlap with each other. He cites People v. Baghai-Kermani, 84 N.Y.2d 525, 620 N.Y.S.2d 313, 644 N.E.2d 1004 (1994), where the court employed the “spillover test” to determine if the withholding of Brady evidence mandated a new trial as to all counts, or only as to the counts affected by the evidence. However, as noted by the State, the Baghai-Kerma-ni court found that although the defendant was tried and convicted of ten counts of drug sales, he was only entitled to a new trial on the two counts to which the Brady evidence applied, not on all ten counts.
In the case sub judice, the newly-discovered evidence was material only to the battery count; the fact that Warner may not have been the person who shot Burton did not preclude him from possessing the heroin and cocaine inside the residence almost a month later. The other evidence noted above showed his possession of the drugs inside the residence. Thus, the newly-discovered evidence likely would not have changed the jury’s verdicts as to the drug counts, and the trial court did not err by denying the motion for new trial as to those counts.
fyln summary, we find that the trial court did not err by denying Warner’s motion to sever the battery count from the drug counts, nor did it err by denying his motion for new trial as to the drug counts. Accordingly, we affirm Warner’s convictions and sentences.
AFFIRMED.
BELSOME, J., concurs in the result.

. The bill of information also charged Maria Lewis with possession with the intent to distribute heroin and cocaine. She subsequently pled guilty to the amended charges of possession of heroin and cocaine and received suspended sentences. She is not a party to this appeal.

. Writ denied, 2012-2251 (La.4/1/13), 110 So.3d 575.

. Writ denied, 2011-1425 (La.12/16/11), 76 So.3d 1200.

. Writ denied, 2013-0561 (La.l 1/1/13), 124 So.3d 1107 and 2013-0752 (La.l0/30/13),124 So.3d 1102.

.Writ denied, 2013-0625 (La. 10/11/13), 123 So.3d 1216.

. The defendant’s writ from this court's ruling is pending in the Louisiana Supreme Court, 2013-1931.

. As noted above the State subsequently nolle prosequied the battery count and the severed firearm count.

. Writ denied, 2012-2069 (La.3/15/13), 109 So.3d 375.